[Civ. No. 16740. First Dist., Div. One. June 27, 1956.]

HARRY ATHERLEY, Respondent, v. MacDONALD, YOUNG and NELSON, INC. (a Corporation) et al., Appellants.

Hadsell, Murman & Bishop for Appellants.

W. A. Lahanier, Frank B. Blum and John F. Gallen for Respondent.

PETERS, P. J.—Plaintiff, Harry Atherley, brought this action for personal injuries received by him when he fell down a stairway while working on the Emporium building then under construction in the Stonestown shopping district in San Francisco. The defendants are the Stoneson Development Corporation, the owner of the building, MacDonald, Young and Nelson, Inc., the construction managers for the owner, and the Fair Manufacturing Company, a subcontractor

on the job. The jury awarded the plaintiff $45,000 against the first two named defendants, but exonerated the Fair Manufacturing Company. The first two named defendants appeal.

The accident occurred on a stairway located on the northeast corner of the building, and leading from the ground floor to the next higher floor. The Fair Manufacturing Company had the subcontract to install this and the other metal stairways required by the plans and specifications. The stairway in question, going upward, first has about eight steps, then a small landing, then 12 to 14 steps leading to a large landing. Here the stairway reverses itself and goes up an additional seven steps. Such metal stairways are designed so that the tread of the step ultimately is filled in with cement or asphalt or similar substance. At the time of the accident the fill had not been inserted, the stairway then consisting simply of the metal framework. To accommodate the fill there is a metal lip on the front of each step that projects upward about an inch and a half and then hooks over. The fill is poured to the level of this lip.

There is evidence that at the time of the accident the stairway was completely installed with the exception of the fill in the treads, and the installation of the handrails. This is challenged by appellants. They presented witnesses who testified that at the time of the accident several steps were still missing between the large landing and the upper level. The foreman of Fair Manufacturing Company testified that by June 21, 1951, his company had completed the stairway, except for the handrails, and that on that date he told the foreman of MacDonald, Young and Nelson that the stairway was completed and turned it over to him. This conflict was for the trial court, and must be resolved against appellants.

The treads of a metal stairway are not filled in until the building is completed, and the handrails are not installed until the lathing and plastering is completed. Admittedly, it was not the responsibility of Fair Manufacturing Company to install the fill, that being the responsibility of appellant MacDonald, Young and Nelson.

The respondent was employed as an electrician by the electrical subcontractor, and had been assigned, by his employer, the duty of running the fire alarm system on the northeast side of the building. On the day before the accident respondent and his foreman went up the stairway here involved as far as the large landing to look over the area where

the fire alarm system was to be installed. The next morning about 10 a. m., June 27, 1951, respondent walked up the stairway as far as the large landing and installed the required conduit pipe for the fire alarm system. Using the stairway was the most practical way to reach the point where the fire alarm system was to be installed. He then proceeded to descend the stairway. He placed his left foot on the top step and, as he brought his right foot forward, the heel of this foot caught on the top or next lower step. This threw him forward. There was nothing to grab. Respondent put his arms up to protect his face and fell some 18 feet before hitting on the small landing. As a result of this fall he admittedly suffered severe fractures of both wrists. For these injuries he was hospitalized for six weeks. In April of 1952 he again severely injured his right wrist while cooking. There is medical testimony to the effect that the second injury was probably the result of an incomplete union of the first injury. This second injury kept respondent in the hospital two months.

At the time of respondent's fall there were no barriers in front of the stairway. There was substantial evidence that, prior to the accident, various other workmen had used the stairway.

Respondent, as already pointed out, brought this action against the two appellants and the Fair Manufacturing Company, charging them with negligence. Defendants denied the pertinent allegations and pleaded, as affirmative defenses, contributory negligence and assumption of risk. The jury brought in a unanimous verdict of $45,000 against the two appellants, but found in favor of the Fair Manufacturing Company.

Appellants first contend that as to them respondent was at most a business invitee to whom appellants only owed the duty to warn of known latent dangers, and were under no duty to warn of obvious dangers. ▋ They point out that an invitee to a building under construction is only invited to use the building in its then incomplete condition. This is undoubtedly the law. (*Kolburn* v. *P. J. Walker Co.,* 38 Cal.App.2d 545 [101 P.2d 747]; *Mitchell* v. *A. J. Bayer Co.,* 126 Cal.App.2d 501 [272 P.2d 870].) This argument, however, is predicated on the unwarranted assumption that section 6400 of the Labor Code is not applicable to appellants. That section provides that: Every employer shall furnish employment and a place of employment which are safe for

the employees therein.'' ▮ This section, if applicable, adds this statutory duty to the normal duties of an invitor.

. ▮ The trial court refused to instruct on the normal duties owed by an invitor to an invitee, but instead instructed that section 6400 was applicable and therefore there was also applicable a construction safety order of the Division of Industrial Safety, Number 1586 which, in subdivision (e), provides: ''Stairways on which the treads have to be filled in later with cement or other material shall have wooden treads not less than ⅞ inches (⅞") thick, full width of the tread, firmly fitted in place and replaced when worn below the level of the metal nosing. Where skeleton iron stairs are installed, they shall have wooden treads and landings not less than one and one-fourth (1¼") thick.''

Admittedly, the wooden treads required by this rule had not been installed at the time of the accident. The duty to install them was on appellants.

The trial court instructed that a violation of this safety order would constitute negligence as a matter of law; that if the jury found a violation of this safety order and that such violation proximately contributed to respondent's injuries, and that respondent was not guilty of contributory negligence, then their verdict should be against appellants. The trial court further instructed that the duty of complying with a safety order designed to protect members of the public rightfully on the premises could not be delegated to a third person or contractor.

Appellants objected to the introduction of this safety order into evidence on the ground that it was ''incompetent, irrelevant, immaterial, not binding upon the owner or the agent of the owner but binding only upon the constructor of the steel stairway in question.'' The safety order was admitted.

▮ Appellants now urge that it was error to admit the safety order into evidence as against appellants because appellants were not the ''employers'' of respondent, or of the electrical subcontractors, within the meaning of section 6400 of the Labor Code. Appellants cite cases which are not applicable to the factual situation here presented. Thus, they cite *Neuber* v. *Royal Realty Co.*, 86 Cal.App.2d 596 [195 P.2d 501], holding that a lessor is not liable for non-compliance with an industrial safety order by a tenant who had employed the plaintiff, and *Hayden* v. *Paramount Productions, Inc.*, 33 Cal.App.2d 287 [91 P.2d 231], holding that a general contractor was not liable for injuries suffered by

an employee of a subcontractor where the general contractor had no right of control over the activity prohibited by the safety order. Obviously, in these cases, the defendants were not "employers" of the injured party within the meaning of section 6400 of the Labor Code.

Similar to the Hayden case is *Hard* v. *Hollywood Turf Club,* 112 Cal.App.2d 263 [246 P.2d 716]. There the employee of a subcontractor, using a scaffolding of his employer, attempted to sue the general contractor for injuries caused when the scaffolding collapsed. There was no evidence of any control by the general contractor over the employees of subcontractors, nor did the general contractor have anything to do with the construction of the scaffold. Under such circumstances the court properly held that the "duty to furnish safe place of work" section had no application to the general contractor insofar as the injured employee of the subcontractor was concerned. This conclusion was based on the reasoning that the safety scaffolding sections of the Labor Code which were violated were not in the same portion of the Labor Code as the duty of employer sections of that code, and were not included within the statutory definition of employer there contained. (The Hard case was discussed and distinguished in *Snyder* v. *Southern Calif. Edison Co.,* 44 Cal.2d 793 [285 P.2d 912].)

In the instant case the statutory duty to provide a safe place to work is embodied in section 6400 of the Labor Code which is in part I of division 5 of that code. In the same part and division of the code is section 6304 which defines employer as follows:

" 'Employer' shall . . . include every person having direction, management, control, or custody of any employment, place of employment, or any employee."

As already pointed out, although the evidence is conflicting on the issue, there is substantial evidence to support the finding that at the time of the accident both appellants had the "direction, management, control" of the stairway on which respondent was injured. This is quite clear as to MacDonald, Young and Nelson, the contractor to whom the stairway had been turned over by respondent's employer, and whose duty it was to install the wooden treads. The legal responsibility of Stoneson Development Company is also clear. The evidence shows that it was not only the owner of the premises, it was also the builder. Its agreement with its co-defendant made MacDonald, Young and Nelson its construc-

tion manager, that is, its agent, and not an independent contractor. Thus, the agreement provides that the MacDonald firm shall be construction manager, that is, the manager or agent of Stoneson. The construction manager was to enter into subcontracts and purchase orders in the name and subject to the approval of Stoneson. Stoneson reserved the right to elect to perform the work by other means than provided in the agreement by giving notice in writing. Under the agreement the employees were carried on Stoneson's payroll and expressly designated as the employees of Stoneson, and not those of the construction manager. The compensation of the construction manager was based on a percentage of the construction cost. Other provisions of the agreement and portions of the evidence could be referred to to demonstrate that Stoneson was the builder as well as the owner, with the MacDonald firm its managerial agent, but enough has been cited to show that both appellants at the time of the accident had "control" over the stairway either as the builder, owner or supervisor of the work.

It has already been pointed out that it is an admitted fact that it was the duty of the MacDonald firm to install the wooden treads. This was also the duty of Stoneson. It was a nondelegable duty. (*Snyder* v. *Southern Calif. Edison Co.*, 44 Cal.2d 793 [285 P.2d 912].) Appellants' witnesses testified that such treads were in fact installed by MacDonald 10 days to two weeks after the accident. Respondent's helper, however, testified that MacDonald's workmen, in fact, started to install the wooden treads immediately after the accident, and before respondent has even reached the hospital. There is substantial evidence that the wooden fillers could be inserted as soon as the stairway was completed and even before completion.

Under this evidence it is clear that appellants were "employers" under section 6304 of the Labor Code, and that as such they failed to furnish a safe place of employment to "employees" as required by Labor Code, section 6400, in that they failed to comply with the safety order above quoted. (See generally *Bickham* v. *Southern Calif. Edison Co.*, 120 Cal.App.2d 815 [263 P.2d 32] ; *Snyder* v. *Southern Calif. Edison Co.*, 44 Cal.2d 793 [285 P.2d 912]; and dicta in *Mula* v. *Meyer*, 132 Cal.App.2d 279, 283 [282 P.2d 107].) It is equally clear that the jury could find that violation of the safety order was at least a proximate cause of the accident.

■ Appellants next contend that there is a statutory prohibition against the admission into evidence of safety orders of the Industrial Accident Commission. The statute relied upon is section 6313 of the Labor Code which provides: "The commission may investigate the cause of all industrial injuries resulting in disability or death which occur within the State in any employment or place of employment . . .

"The commission may make orders or recommendations with respect to the cause of such injuries which are just and reasonable; *but neither the order nor the recommendation of the commission shall be admitted as evidence in any action for damages* or any proceeding to recover compensation, based on or arising out of such injury or death." (Italics added.)

It is quite apparent that "orders or recommendations" referred to in this section are not the standard general orders of the commission relating to safety requirements, such as the safety order here involved, but are the "orders or recommendations" arising out of and made in connection with specific accidents. This is clearly indicated by the first paragraph of the quoted section empowering the "commission" to "investigate the cause of all industrial injuries," and by the second paragraph which authorizes the commission to "make orders or recommendations with respect to the cause of such injuries." It is these "orders or recommendations" that are not admissible.

There is an obvious distinction, and should be, between a general order fixing a safety standard for all employers affected by it, and an order made in respect to a specific investigation of a past accident. The general safety order establishes a minimum standard for all employers affected, and operates prospectively. But the order made as the result of a specific accident is based on hindsight. If a cloak of protection were not extended around an investigation the parties affected would be reluctant to discuss the cause of the accident and how such accidents could be prevented in the future. The inadmissibility provision thus encourages and permits a proper investigation. No such public policy requires the exclusion of a general safety order such as the one here involved.

It is worthy of note that when the safety order was offered in evidence appellants' sole objection was that it was "incompetent, irrelevant, immaterial, not binding upon the owner or the agent of the owner, but binding only upon the constructor of the steel stairway." Section 6313 of the

Labor Code was not mentioned. ■ Of course, when inadmissible evidence is offered the opposing party must object and specifically state the grounds of his objection. (*Perry v. McLaughlin,* 212 Cal. 1 [297 P. 554].) ■ A general objection does not raise specific grounds not urged (*Bundy v. Sierra Lbr. Co.,* 149 Cal. 772 [87 P. 622]), and an objection specifying the wrong ground is as bad as a general objection, and amounts to a waiver of all grounds not urged. (*Estate of Huston,* 163 Cal. 166 [124 P. 852]; *Reardon* v. *Richmond Land Co.,* 21 Cal.App. 357 [131 P. 894].)

For these various reasons the safety order here involved was properly admitted into evidence.

The next contention of appellants is that respondent was guilty of contributory negligence as a matter of law. It is a rare case in which it can be said that the plaintiff is guilty of contributory negligence as a matter of law. Normally, of course, this defense is one of fact for the trier of the fact. ■ ''Where different conclusions may be reasonably drawn by different minds from the same evidence, the decision must be left to the jury.'' (*McStay* v. *Citizens Nat. T. & S. Bank,* 5 Cal.App.2d 595, 600 [43 P.2d 560]; see also *Rau* v. *Redwood City Woman's Club,* 111 Cal.App. 2d 546 [245 P.2d 12].) It is of course true that a plaintiff is under a duty ''to look where he was going and to observe that which was in plain sight in front of him.'' (*Curland* v. *Los Angeles County Fair Assn.,* 118 Cal.App.2d 691, 695 [258 P.2d 1063].) But the same case on the same page also pointed out: ''Whether the danger was obvious to plaintiff was a question of fact for the jury. [Citations.] Whether a person, under the circumstances, made a reasonable use of his faculties is also a question for the jury.''

Applying these rules to the facts of the instant case it is apparent that the question of respondent's contributory negligence was one of fact and not of law. Appellants point to the evidence that the lip over which respondent tripped is about an inch and a half high and then hooks over about half an inch. The lighting in the area was ''sufficient.'' Appellants also emphasize that respondent had been an electrician for 40 years, and during that period frequently worked on heavy construction similar to that here involved. The type of stairway here installed was a common type. It is also argued that respondent had an opportunity to observe the exposed lip not only on the day of the accident, but on the day before when he ascended and descended the stairway.

Appellants also produced their accident prevention adviser who testified that he thought that he had posted on this job one or two posters on stairway safety prior to the accident. He also testified as to what he considered the standard practice and the one generally followed in using a metal stairway on which the wooden treads had not been installed. He stated that a workman should walk with the ball of his foot a little back of the lip so that the toe of the shoe extends over the lip. This minimizes the danger of catching the heel. From a safety standpoint it would be unsafe practice to so place the foot that the toe of the shoe is in front of the lip.

Respondent testified that when he and another workman used the stairway the day before the accident he ''did not pay any particular attention to the stairs,'' that is, he ''glanced at them, as you normally would.'' When he walked down the stairs that day he ''looked down the stairs as one would normally look,'' and proceeded to go down the stairs ''normally.'' On the day of the accident he ascended the stairway as one would normally ascend a stairway of that type just as he had done the day before. When he finished his job, he crossed the landing and started to descend. He glanced down at the stairs and put his left foot on the first step. In bringing his right foot forward the heel caught on the lip of either the first or second step, that is, either on the landing or the next step down. At that moment he ''was looking as you would normally look downward,'' that is, ahead of where he was going. He was ''coming down the stairs just as [he] did the day before in a normal fashion on that type of stair.'' After he fell he noticed the absence of the wood planking.

These facts are quite different from those in *Mitchell* v. *A. J. Bayer Co.*, 126 Cal.App.2d 501 [272 P.2d 870], where it was held that a person who deliberately walked into an unfamiliar pitch-dark area was guilty of contributory negligence as a matter of law. Equally distinguishable is *Fletter* v. *City & County of San Francisco*, 110 Cal.App.2d 820 [244 P.2d 59], in which a plaintiff, knowing of the existence of an opening, stepped across it, but misjudged the distance. ■ In the instant case, unlike the two cited cases, reasonable minds can differ as to the obvious nature of the dangerous condition, and as to whether respondent used the stairway in a reasonable fashion. This being so, the issue was properly left to the jury.

■ The contention that it was contributory negligence

as a matter of law to use the stairway before the wooden treads were installed is untenable. While other means of access to the work area could have been used, the evidence shows that the stairway provided the easiest method of access. Plaintiff testified that it was the only "humanly possible" method of access to the work area.

The contention that, as a matter of law, respondent assumed the risk of injury is clearly without merit. It is elementary law that "in cases of violation of a safety regulation the defendant cannot defend on the ground that the plaintiff for whose protection the regulation was passed assumed the risk." (*Mula* v. *Meyer*, 132 Cal.App.2d 279, 284 [282 P.2d 107]; see also *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409 [218 P.2d 17]; *Bickman* v. *Southern Calif. Edison Co.*, 120 Cal.App.2d 815 [263 P.2d 32].)

The appellants submitted a series of instructions to the effect that if the danger was obvious, then appellants were not negligent in their duty to respondent. Such instructions might be permissible in an invitor-invitee case, but in this case, as already pointed out, the duty owed by appellants to respondent was greater than the duty existing between an ordinary invitor and invitee. Under Labor Code, sections 6304 and 6400, appellants owed the statutory duty to respondent to furnish him a safe place of employment. The breach of this duty was negligence *per se*. (*Mula* v. *Meyer*, 132 Cal.App.2d 279 [282 P.2d 107]; *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409 [218 P.2d 17]; *Bickham* v. *Southern Calif. Edison Co.*, 120 Cal.App.2d 815 [263 P.2d 32].) Thus, the standard of care is fixed by the safety order. The "obviousness" of the defect, if it existed, relates not to the duty of appellants, but to the contributory negligence of the respondent, and the jury was so instructed. The jury was instructed that violation of the safety order was negligence *per se*, that the duty imposed by the safety order could not be delegated, and that the one owing such duty is liable, in the absence of contributory negligence by the injured person, for injuries proximately caused by the violation of the safety order, and that if Fair Manufacturing Company had completed the stairway and was no longer in control of it, then it should be exonerated.

Obviously, the jury must have found that the stairway was not in the Fair Manufacturing Company's control, but was in the control of appellants.

The court instructed at length, and correctly, on contribu-

tory negligence. This was all that appellants were entitled to. ▮ While they were legally entitled to instructions on their theory of the case, they were not entitled to have their defense of contributory negligence stated in various ways and in the language they desired. They were entitled to instructions on contributory negligence. The trial court instructed on this doctrine, at length. This was all appellants had the legal right to expect.

Moreover, the court did instruct that the respondent was under a legal duty to exercise reasonable care for his own safety, and then instructed that "general human experience justifies the inference that when one looks in the direction of something clearly visible, he sees it. When there is evidence to the effect that one did look, but did not see what was in plain sight, it follows that either there is an irreconcilable conflict in such evidence or the person was negligently inattentive."

▮ Appellants claim that it was error to fail to instruct that they were not liable for the negligence of Fair Manufacturing Company, a subcontractor. If it be assumed that such an instruction should have been given, failure to give it could not possibly have been prejudicial. The jury exonerated Fair Manufacturing Company. Thus, the jury found that that defendant was not negligent. Therefore, appellants' liability could not be based on imputed negligence.

▮ The failure to give an instruction on "unavoidable accident" was not error. The jury was instructed that defendants' liability, if any, was predicated on negligence proximately causing the accident. Negligence and proximate cause were fully explained as was burden of proof. These instructions covered the relevant issues adequately.

▮ The court properly refused to give appellants' proffered instruction that for a momentary lapse to excuse contributory negligence it must be produced by some sudden and adequate disturbing cause, because the proffered instruction did not correctly state the law (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225 [282 P.2d 69]), and because there is no evidence in this case of forgetfulness of a known danger.

▮ Appellants also object to the refusal to give their instruction to the effect that if plaintiff had the choice of using available ladders and an incomplete stairway "to go between the floors," and if the stairway was the more dangerous method, and if plaintiff then chose the unfinished stairway, then he was guilty of contributory negligence. This instruc-

tion was properly refused for several reasons. There is no evidence at all that respondent used the stairway "to go between the floors." Respondent went up only as far as the large landing, at which point he had work to do. If the evidence shows that some of the treads had not been installed prior to the accident (the evidence is conflicting on this issue) those stairs were above that landing. The court was, of course, under no duty to revise the instruction. (*Huggans* v. *Southern Pac. Co.*, 92 Cal.App.2d 599 [207 P.2d 864].)

 Appellants proposed an instruction to the effect that any damages that might be awarded "are not subject to payment of Federal or State Income Tax, and accordingly are diminished thereby." The court failed to give the instruction. This was not error. Two out-of-state cases are cited in support of the instruction. In *Hall* v. *Chicago & N. W. Ry Co.*, 349 Ill.App. 175 [110 N.E.2d 654], it was held that it was proper for the defense to argue to the jury that in determining damages the jury should consider the plaintiff's net income and not his gross income. *Dempsey* v. *Thompson*, 363 Mo. 339 [251 S.W.2d 42], recommended that the very instruction here offered should be given, but also held that the giving or refusing to give such a cautionary instruction was within the discretion of the trial court, and that the failure to give it was not reversible error.

In the instant case the court instructed at some length on the proper measure of damages. The jury, without equivocation, was told that it could award compensatory damages only, that is, those damages which would fairly compensate plaintiff for his pecuniary loss. The items of recoverable damage were itemized. The court specifically directed that "speculative," or "conjectural," or "remote" damages could not be recovered. Thus, even though it would have been proper to give the proffered instruction, it was not reversible error to fail to do so.

 Appellants next complain of the refusal of the trial court to grant them a continuance. The request for a continuance arose out of the following facts: Appellants had cross-complained against Fair Manufacturing Company. Fair demurred. The demurrer was sustained and the cross-complaint stricken. Appellants appealed, and sought a continuance until that appeal was decided. It was also urged that the California Casualty Indemnity Exchange was representing Fair Manufacturing Company and also by virtue of a subro-

gation lien for respondent's hospital expenses, had an interest in the recovery. It is obvious that these facts in no way prejudiced appellants insofar as their defense against Atherley was concerned. Obviously, the rights between respondent and appellants were separate and distinct from the rights between Fair Manufacturing Company and Atherley. It should be also pointed out that the record shows that the California Casualty Company took no active part in respondent's case. There was no error in denying the continuance.

The contention that the damages are excessive as a matter of law is clearly unsound. The plaintiff suffered severe fractures of both wrists. Because of the unhealed condition he seriously reinjured his right wrist. He has a limitation in the twisting ability of both forearms, and his gripping abilities have been so reduced that he can no longer do the heavy work required of an electrician. These conditions are permanent. He was hospitalized for a total period of 3½ months, and his doctor bills totaled $2,602.04. He suffered severe pain. When injured respondent had a life expectancy of nearly 20 years. His rate of pay was then $110 a week. He can no longer work at his chosen occupation. The jury verdict was for $45,000. Under these facts we cannot hold that the verdict is excessive as a matter of law. "For us to hold the award excessive we must find that it was so large as to indicate passion or prejudice on the part of the jurors." (*Newton* v. *Thomas,* 137 Cal.App.2d 748, 769 [291 P.2d 503]; see also *Holder* v. *Key System,* 88 Cal.App.2d 925 [200 P.2d 98].) That is not this case.

The other contentions raised do not merit consideration.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 21, 1956.