[Civ. No. 9188.   Third Dist.   May 1, 1958.]

JOSEPH W. MAIA, JR., Appellant, v. SECURITY LUM-
BER AND CONCRETE COMPANY, INC. (a Corpora-
tion), Respondent.

Winters & Winters and Robert K. Winters for Appellant.

Leo C. Dunnell, William H. Herbert and Adey May Dunnell for Respondent.

PEEK, J.—This is an appeal by plaintiff from a judgment in favor of defendant in an action for personal injuries suffered by plaintiff as the result of the alleged negligence of defendant. The order denying his motion for a new trial, not

being appealable, his purported appeal therefrom must be dismissed.

The defendant corporation had experienced mechanical difficulties in the operation of a conveyor belt at its cement mixing plant in Vallejo, and its president, David Paganini, communicated with the Yuba Manufacturing Company concerning the matter. Yuba, who was plaintiff's employer, suggested that defendant inform it when the plant could be shut down, and an examination would then be made of the machinery. Thereafter, pursuant to a phone call from Paganini, plaintiff, upon instructions, accompanied one Carmer, a salesman for Yuba, to defendant's plant. At the time of their arrival, approximately 4 p. m., there was no regular work activity, nor was there any movement of equipment such as trucks or machinery. Plaintiff was taken to an employee of defendant by the name of Beaver, who in turn took him to the cement mixer. An examination was made of the conveyor at the base of the mixer which was approximately 60 feet high. As a part of their examination they cleaned some sand from the pawls. While plaintiff was continuing his inspection, another employee of defendant, one Amos Jackson, turned on the switch, thereby starting the conveyor belt. Plaintiff, who at that moment was leaning against it, was thrown headfirst into a chute and seriously injured. Beaver knew that it was the custom for Jackson to run the conveyor at the end of each day to remove any gravel remaining in the buckets, but he informed no one of the inspection which he and plaintiff were making at the top of the mixer, nor did he place any warning signs on the switchboard. Jackson, who was the regular operator, had been instructed not to start the machinery when anyone was around it or working on it. On the day of the accident he had not been informed that there was to be any repair work, and at the time he turned on the power he noticed no one. The switches were directly below a platform which obscured his view of the top of the mixer. Plaintiff made no inquiry as to whether the switches were pulled to a locked position, nor was he so advised by anyone at the plant. Since he had been informed the plant was shut down, he took it for granted that the switches were off.

Plaintiff makes two contentions on appeal: (1) That the court erred in giving certain instructions at defendant's request; and (2) that the court erred in admitting certain expert testimony.

The first instruction which plaintiff contends removed all

duty from the defendant and owner of the machinery is as follows:

"There has been introduced into evidence and read to you in this case General Industry Safety Order No. 3276 of the Division of Industrial Safety.

"This safety order provides as follows:

"(b) Every prime mover or power driven machine equipped with lockable controls or readily adaptable to lockable controls shall be locked in the 'off' position during repair work. Machines or prime movers not equipped with lockable controls or readily adaptable to lockable controls shall be considered in compliance with this order when positive means are taken such as by disconnecting the equipment from its source of power, sealing the controls or other action which will prevent the prime mover or machine from being started. In all cases, caution signs with adequate wording shall be placed on the controls of the machines and prime movers during repair work. . . .

"(c) *The employer shall provide a sufficient number of caution signs and padlocks, seals or other similarly effective means which may be required* by any foreseen repair emergency. Caution signs shall be equipped with a permanently attached means which can be readily secured to the control.

"*You are instructed that the obligations and duties contained in this section* in regard to locking machinery or disconnecting the same from its source of power before undertaking repairs, and the obligations in connection with the placement of caution signs *during repair work are the obligations of the employer of the repair man and not obligations of the owner of the premises on which the repairs are undertaken,* unless you find that repair work was undertaken by both the employee of the owner of the premises and of the repairer, in which case it would be the responsibility of both or all individuals working upon the repair of such machinery to comply with the provisions of the safety order which I have just read to you, and in such event, *a failure on the part of either or both to comply with said safety order would constitute negligence.*" (Instruction No. 33; emphasis added.)

Defendant's instruction Number 19 below was also given by the court in this regard:

"*You are instructed* that it was the *duty of plaintiff's employer,* and *not the duty of defendant,* to exercise reasonable and ordinary care to adopt safety rules and methods of work for such employees." (Emphasis added.)

■ Section 6304 of the Labor Code provides in part that the term "employer" includes ". . . every person having direction, management, control, or custody of any employment, place of employment . . ." That definition, when applied to the facts in the present case, would appear to leave no doubt but that plaintiff, at the time of the accident, was an employee of defendant. (*Atherley* v. *MacDonald, Young & Nelson, Inc.*, 142 Cal.App.2d 575 [298 P.2d 700].) As such, defendant was obligated under the provisions of section 6400 to provide a "safe" place of employment. Additionally, under 6401, it was obligated to ". . . furnish and use safety devices and safeguards, and . . . adopt and use practices . . . [and] do every other thing reasonably necessary to protect the life and safety of employees." Nor could defendant even ". . . permit any employee to go or be in any employment or place of employment which is not safe." (§ 6402.) The obligations of defendant being so fixed by statute, they could not be delegated. (*Atherley* v. *MacDonald, Young & Nelson, Inc., supra.*)

■ Necessarily therefore instruction Number 33, which specifically placed upon Yuba the obligation of carrying out the safety order, was erroneous. Nowhere in the charge was the jury instructed that defendant had any duty whatever. In fact, by defendant's instruction Number 19, the jury was instructed directly to the contrary.

■ Although by reason of the facts disclosed, the conceded failure to comply with the safety order constituted negligence upon the part of defendant as a matter of law, that does not mean that defendant was absolutely liable since the defense of contributory negligence was available to it. (*Atherley* v. *MacDonald, Young & Nelson, Inc., supra.*) But neither did the failure of defendant to abide by such safety order mean that plaintiff thereby assumed the risk.

The defenses of contributory negligence and assumption of risk are separate and distinct defenses. While the defense of contributory negligence was available to defendant, the same cannot be said as regards the doctrine of the assumption of risk. ■ It is "elementary law" said the court in the Atherley case, that " 'in cases of violation of a safety regulation the defendant cannot defend on the ground that the plaintiff for whose protection the regulation was passed assumed the risk.' " (*Mula* v. *Meyer*, 132 Cal.App.2d 279 [282 P.2d 107] ; *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409 [218 P.2d 17].) In view of the enunciated rule the court also

erred prejudicially in giving the jury defendant's instruction on the doctrine of assumption of risk.

Plaintiff contends further that the court erroneously admitted, over his objections, the opinion testimony of two witnesses called by the defendant as to the customs of the trade regarding proper safety precautions to be taken by repairmen doing work on power-driven machinery in the area. The first of these witnesses, Mr. Kehrlein, testified he was a lecturer, writer and consultant on safety and, as supervising safety engineer with the Division of Industrial Safety, had edited various rules and regulations including General Industrial Safety Order Number 3276. His testimony was that the duty imposed under said order, particularly in relation to the locking of machinery prior to repair work, was on the employer of the repairmen and not the owner of the premises where the machinery was located; that he was familiar with the customs and usages of repairmen in connection with moving machinery and safety measures, and that the same were uniform throughout the state; and that in this regard the repairman himself took the necessary precautions to see that the power was off and that warning signs were posted on the controls. Courts are bound by the statute, not by individual opinions of its interpretation. (*In re Lavine,* 2 Cal.2d 324, 327 [41 P.2d 161, 42 P.2d 311].) Additionally, while failure to observe custom may be evidence of negligence, the standard of due care is not fixed by custom or altered by its presence or absence. (*Pauly* v. *King,* 42 Cal.2d 649, 655 [284 P.2d 487].) It necessarily follows that the testimony given by Kehrlein relating to the interpretation of said safety order was clearly inadmissible.

By reason of what we have heretofore said it becomes unnecessary to answer the further contentions of plaintiff.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied May 26, 1958, and respondent's petition for a hearing by the Supreme Court was denied June 25, 1958.