[Civ. No. 10556. Third Dist. Sept. 13, 1963.]

TED MASON, Plaintiff and Appellant, v. JACK CASE et al., Defendants and Respondents.

174

P. M. Barceloux, Burton J. Goldstein, Reginald M. Watt and Goldstein, Barceloux & Goldstein for Plaintiff and Appellant.

Rich, Fuidge, Dawson & Marsh, John L. Feeney and Charles C. Dawson, Jr., for Defendants and Respondents.

FRIEDMAN, J.—Plaintiff Ted Mason was injured in the course of his employment as a mechanic with Westside Tractor Company. He filed this common-law negligence action against Jack Case, vice president of the firm, and Herbert Kattenhorn, the shop foreman. There was a jury verdict in favor of both defendants and Mason appeals.

Effective in September 1959 section 3601 of the Labor Code was amended to ban negligence actions between employees in cases where workmen's compensation is available. (Stats. 1959, ch. 1189.) Mason's accident antedated the amendment and is not affected by it.

Mason was a mechanic and machinist with approximately 20 years of experience. His injury occurred during his second day on the job at Westside Tractor Company. He had been interviewed and employed by Kattenhorn, the shop foreman, and had been assigned by Kattenhorn to adjust and refasten the tracks of the shop's overhead crane. These tracks were affixed to horizontal beams and ran parallel to the east and west walls of the shop. These walls were approximately 120 feet long. Kattenhorn discussed the job with Mason and showed him the location of a sectional ladder which Mason could use in the course of his work. Kattenhorn told Mason that in order to keep the tracks properly aligned he should

work from one track to the other as he worked down the length of the tracks. Kattenhorn assigned another employee, one Moore, to help Mason. Mason was present when Moore received his instructions and knew that Moore was simply told to "give him a hand."

The job required Mason to use a drill press in the fabrication of metal washers to be used with lag screws in fastening down the rails. Mason fabricated the washers and then went to get the ladder which was leaning against a wall. The ladder was an extension ladder composed of two sections, each approximately 14 feet long. As they stood against the wall, the two sections were separated. The lower section of the ladder was fitted with 4/5-inch metal overhangs in the proximity of its top rung, and these overhangs would have fitted over the horizontal beams. Mason, however, selected the top section of the ladder, which had no such metal fittings.

The ladder was first used on the west wall in one location and then moved to the east wall. Moore, Mason's helper, placed the ladder against the east wall just north of the drill press which Mason had used earlier. The shop floor was level rough concrete. When Mason mounted the ladder, it slipped downward and he fell, suffering the injuries for which he sues. As the ladder slipped it left vertical gouge marks on the wall and slip marks on the floor, the latter being 3 to 5 feet long. There is no direct evidence of the cause of the slippage. Mason testified that after the accident he noticed metal drill filings and oil on the floor in that area. Other witnesses denied seeing oil or filings. Mason was the only one in the shop who had used the drill press on that date. There was a shop custom that each employee whose work created a litter on the floor would clean up that litter, brooms and rags being available for that purpose. There is no indication that Mason was aware of the custom.

At the time the ladder slipped Moore was standing close to its base. Mason testified that he assumed Moore was holding the ladder, Moore had not held the ladder when Mason had climbed it previously, and Mason had not instructed him to do so.

Theory of plaintiff's action is that Case and Kattenhorn were supervisory employers who had responsibility for equipment supplied to employees and who "so negligently performed their duties as to permit the ladder to slip, break and fall...." Embodied in instructions to the jury were certain Labor Code sections and a safety order of the state Division of

Industrial Safety. Section 6304 of the Labor Code provides that "employer" shall include "every person having direction, management, control, or custody of any employment, place of employment, or any employee." Every employer must furnish employment and a place of employment which are safe for the employees. (§ 6400.) He "shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every other thing reasonably necessary to protect the life and safety of employees." (§ 6401.) No employer shall require or permit any employee to be in any employment or place of employment which is not safe (§ 6402); nor shall he fail or neglect to provide and use safety devices and safeguards or to adopt and use methods and processes reasonably adequate to render the employment and place of employment safe or to do every other thing reasonably necessary to protect the life and safety of employees. (§ 6403.)

The safety order provides in part, "Where there is a danger of a portable ladder slipping in use, provision shall be made to secure the ladder in position by use of hooks, ropes, scabs, spikes, cleats, or by other antislip devices, or by stationing an employee at the base of the ladder to hold it in position during use." (Gen. Ind. Safety Order No. 3362, Div. of Ind. Safety, Cal. Admin. Code, tit. 8, § 3362.)

■ Before turning to the issues raised by plaintiff's appeal, we consider a defense contention that Case is not personally liable as a matter of law, not being an "employer" as defined by section 6304. Case was sales manager and vice president of Westside Tractor Company. He exercised no management or control over the shop, being concerned with sales activity. Although as a corporate officer he had the power to discharge Kattenhorn and to review the economics of shop operation, at no time did he give any orders as to shop operation. Kattenhorn was "in full charge of the shop," did all hiring and firing and assigned work to shop personnel. There was no evidence that Case actively participated in the occurrences leading up to the accident, or that he violated any common law duty of care. Case's situation falls directly within the rule of *Towt* v. *Pope*, 168 Cal.App.2d 520 [336 P.2d 276]. In effect, *Towt* holds that section 6304 was not designed to impose personal liability for violation of plant safety requirements upon a corporate

officer who is outside the chain of responsibility for the company activity in which the accident occurs. Case was outside that chain of responsibility. To paraphrase section 6304, he had no direction, management, control or custody of the shop or over Mason's employment. Thus he was not an "employer" as defined by the statute and, as a matter of law, incurred no personal liability to plaintiff. (Cf. *Jackson* v. *Georgia-Pacific, Inc.*, 195 Cal.App.2d 412 [15 Cal.Rptr. 680] ; *Cravens* v. *Kurtz*, 210 Cal.App.2d 810 [26 Cal.Rptr. 802].)

Principal error urged on appeal is the trial court's action in submitting the issue of Mason's contributory negligence to the jury. An established rule of public policy excludes the somewhat analogous defense of assumption of risk in actions based on violation of safety statutes or safety orders adopted for the protection of employees. (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 430-431 [218 P.2d 17] ; *McAllister* v. *Cummings*, 191 Cal.App.2d 1, 11 [12 Cal.Rptr. 418] ; *Martin* v. *Stone*, 187 Cal.App.2d 726, 730 [10 Cal.Rptr. 184] ; *Atherley* v. *MacDonald, Young & Nelson, Inc.*, 142 Cal. App.2d 575, 587 [298 P.2d 700].) Counsel for Mason earnestly contend that the same public policy considerations should exclude the defense of contributory negligence.

The assumption of risk defense, although similar in some respects to contributory negligence, has a marked difference. Contributory negligence consists essentially of lack of care; assumption of risk arises regardless of care. The latter is based essentially on consent which, in turn, requires evidence that the victim had knowledge of the specific risk. (*Vierra* v. *Fifth Avenue Rental Service*, 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777].) Where an employee sues for injury caused by violation of a safety statute or safety order, public policy insists that the plaintiff's acquiescence or knowledge should not insulate the defendant from liability for his violation. The rationale is that the employee is in a weak economic position, that he is unable to risk refusal to work in an unsafe place or with an unsafe appliance, hence should not be held to the penalty imposed on one who acquiesces in a danger. (*Finnegan* v. *Royal Realty Co.*, *supra*, 35 Cal.2d at p. 431.)

Contributory negligence, in distinction, is not a matter of waiver or acquiescence. Consequently the public policy which bars assumption of the risk does not apply with equal force to exclude the defense of contributory negligence. So far as the question is an open one, in the domain of a

California public policy which has not yet been enunciated, there is much to be said for the notion that an employee may acquiesce in working in an unsafe place or with unsafe equipment and yet be called upon to act with as much care for his own safety as is reasonable under the circumstances. It is difficult in any event to conceive of a public policy which makes the employee's foreman personally liable to his subordinate when the latter has failed to use such reasonable care for his own safety as the circumstances permit.

The problem, however, is broader and wider than the narrow (and now almost obsolete) class of negligence suits between fellow employees. It may arise in any action based on violation of safety statutes or orders and may become particularly acute when an employee sues a person other than his own employer for employment-connected injuries arising from such a violation. (See *Gress* v. *Rousseau,* 204 Cal. App.2d 149 [22 Cal.Rptr. 64]; *Nungaray* v. *Pleasant Valley etc. Assn.* 142 Cal.App.2d 653 [300 P.2d 285]; *Rodin* v. *American Can Co.,* 133 Cal.App.2d 524 [284 P.2d 530]; *Mula* v. *Meyer,* 132 Cal.App.2d 279 [282 P.2d 107]; *Pierson* v. *Holly Sugar Corp.,* 107 Cal.App.2d 298 [237 P.2d 28]; cf. *Woolen* v. *Aerojet General Corp.,* 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708].) In some of the California decisions involving violation of safety orders, the issue of contributory negligence was taken for granted, there being no visible debate on the score of its possible exclusion. (*Dunn* v. *Pacific Gas & Electric Co.,* 43 Cal.2d 265, 278-279 [272 P.2d 745]; *Finnegan* v. *Royal Realty Co., supra,* 35 Cal.2d at pp. 428-430; *Atherley* v. *MacDonald, Young & Nelson, Inc., supra,* 142 Cal.App.2d at pp. 585-587; *Bickham* v. *Southern Cal. Edison Co.,* 120 Cal.App.2d 815, 822-823 [263 P.2d 32].) Two California decisions, however, hold that contributory negligence, unlike assumption of risk, is an available defense in injury actions based on violation of safety statutes or orders. (*Maia* v. *Security Lumber & Concrete Co.,* 160 Cal.App.2d 16, 20 [324 P.2d 657]; *Mula* v. *Meyer, supra,* 132 Cal.App.2d 279, 284.)

American case law on the point is in sharp conflict, some courts holding that contributory negligence is an available defense in actions grounded on safety order violations, others barring it. (See Notes 171 A.L.R. 894, 903-906; 10 A.L.R.2d 853; 17 A.L.R.2d 637, 645-647; cf. Rest., Torts, § 483; Prosser on Torts (2d ed.) p. 289; Prosser, *Contributory Negligence as Defense to Violation of Statute,* 32 Minn.L.Rev.

105, 121-122; Note 15 U.Chi.L.Rev. 779.) In our opinion the *Maia* and *Mula* decisions pursue the more acceptable rule.
 It is in keeping with the California view that violation of a safety statute or regulation is negligence as a matter of law, not a source of absolute liability. (*Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 588 [177 P.2d 279].)
 It is consistent with our own view that the public policy reasons which foreclose assumption of the risk are not relevant to the problem of contributory negligence. We hold that the trial court did not err in submitting the issue of plaintiff's contributory negligence to the jury.
 A parallel problem is whether section 2801 of the Labor Code might be applicable to limit or bar the defense of contributory negligence.[1] The specific question is whether section 2801 supplies a rule for this action against defendant Kattenhorn who is an "employer" only in the sense that section 6304 defines him as such; or whether the section is confined to actions between persons standing in the traditional employer-employee relationship. Section 2801, which is part of division III of the Labor Code, is a remainder of the Roseberry Act of 1911 (Stats. 1911, ch. 399). Antedating the Workmen's Compensation Act of 1917 (now division IV of the Labor Code), it was designed to abolish certain common-law defenses and to limit others in injury actions by employ-

---

[1]Labor Code section 2801 provides:

"In any action to recover damages for a personal injury sustained within this State by an employee while engaged in the line of his duty or the course of his employment as such, or for death resulting from personal injury so sustained, in which recovery is sought upon the ground of want of ordinary or reasonable care of the employer, or of any officer, agent or servant of the employer, the fact that such employee has been guilty of contributory negligence shall not bar a recovery therein where his contributory negligence was slight and that of the employer was gross, in comparison, but the damages may be diminished by the jury in proportion to the amount of negligence attributable to such employee.

"It shall be conclusively presumed that such employee was not guilty of contributory negligence in any case where the violation of any law enacted for the safety of employees contributed to such employee's injury.

"It shall not be a defense that:

"(a) The employee either expressly or impliedly assumed the risk of the hazard complained of.

"(b) The injury or death was caused in whole or in part by the want of ordinary or reasonable care of a fellow servant.

"No contract, or regulation, shall exempt the employer from any provision of this section."

ees against employers. (*Gibson* v. *Kennedy Extension Gold Min. Co.*, 172 Cal. 294, 302-303 [156 P. 56]; 2 Hanna, The Law of Employee Injuries and Workmen's Compensation, p. 13.) ▮ Section 3300 (in division IV of the Labor Code) defines the term "employer" for purposes of the workmen's compensation statutes. ▮ Section 6304 (part of division V, part 1, of the Labor Code, dealing with workmen's safety) expands the definition of "employer" to include supervisory employees. Arguably, section 2801 may apply to common-law actions against the latter variety of "employer." We are convinced that such is not the case. ▮ Section 2801 is available to an employee who sues his employer at common law, either because the latter has not provided security for workmen's compensation payments or because the employment is outside the coverage of the Workmen's Compensation Law. (*Mantonya* v. *Bratlie*, 33 Cal.2d 120, 123-124 [199 P.2d 677].) ▮ Necessarily then, "employer" must have the same meaning in section 2801 as it does in the workmen's compensation provisions (div. IV). ▮ The expanded definition of "employer" in section 6304 is expressly restricted to division V, part 1, dealing with workmen's safety. (Lab. Code, § 6301; *Hard* v. *Hollywood Turf Club*, 112 Cal.App.2d 263, 267-270 [246 P.2d 716].) ▮ *Mula* v. *Meyer, supra,* 132 Cal.App.2d at page 283, holds that section 2801 is restricted to the employer-employee relationship, having no application to an action by an invitee against an invitor. Similarly, it has no impact on the present action, even though for other statutory purposes defendant Kattenhorn may be cast in the role of "employer."

▮ Somewhat similar to the issue of contributory negligence is the contention that the trial court erred in instructing the jury that plaintiff Mason, as well as defendants, was under a duty to comply with safety rules. The only safety rule read to the jury was General Industry Safety Order No. 3362 (previously quoted) dealing with portable ladders "where there is danger of ... slipping." *Lokey* v. *Pine Mountain Lumber Co.*, 205 Cal.App.2d 522 [23 Cal. Rptr. 293], is cited for the proposition that some safety orders establish rules of conduct not only for supervisory personnel but for subordinate employees in addition. In support of the challenged instruction, defendant cites the following excerpt from Safety Order No. 3200: " ... these General Industry Safety Orders are promulgated for the guidance of

employers and employees alike." (Cal. Adm. Code, tit. 8, § 3200.)

We reject the notion that Safety Order No. 3200 blankets in all General Industry Safety Orders as rules of care directed at employee-plaintiffs in civil damage suits. Statutory and administrative safety standards become rules of care in negligence actions because the courts adopt them as such. (*Clinkscales* v. *Carver*, 22 Cal.2d 72, 75 [136 P.2d 777].) In promulgating safety orders, the Division of Industrial Safety is enacting rules for industry but not necessarily rules of civil liability. If these safety orders become a two-edged sword in civil actions, they are simultaneously rules of care for employers and shields against liability as well. (See *Lokey* v. *Pine Mountain Lumber Co., supra*, 205 Cal.App.2d at pp. 530-531.) Nor are we receptive to imposition on employees of constructive (and therefore fictitious) knowledge of these orders. The final sentence of Safety Order No. 3200 declares: "Every employer should provide his supervisory staff with a copy of these orders and assure himself that each supervisor is familiar with those sections pertaining to the operations under his supervision." Employers have primary responsibility for safety in employment, for knowledge of safety orders and for their transmission to supervisors and other affected employees. To the extent that an individual safety order may be addressed to a subordinate employee such as Mason, it becomes a rule of care applicable to him in a civil damage action only upon proof that the employer communicated the order to him. No such proof appearing here, the jury instruction was technically erroneous.

We say "technically" erroneous, because General Industry Safety Order No. 3362 is so drafted that it describes nothing more than conduct which reasonable care would demand in any event. It does not categorically demand anti-slip devices or the presence of another employee to hold the ladder. It makes these demands only "Where there is danger of ... [the] ladder slipping in use." Anybody, at least a *reasonable* man, knows that a ladder which is in danger of slipping and which is neither fastened nor held creates an unreasonable risk of harm. Considered as a rule of care in civil actions, the safety order gilds the lily; it belabors the obvious. So far as the case turns on Mason's contributory negligence, the safety order adds nothing.

Defendant requested and the trial court gave the

following formula instruction which is now assigned as prejudicial error: "If you find in this case that the cause of this accident was the result of the slipping of the ladder in question, causing plaintiff to fall to the floor and that plaintiff had his choice of where such ladder was to be placed and how such ladder should be controlled and fastened so as to avoid slipping, then any liability or duty violated toward plaintiff was as much plaintiff's own duty as it was of any other person, and plaintiff must necessarily have been guilty of contributory negligence and cannot recover in this case."

The instruction is inartistically drawn. It has, at the minimum, the vices common to formula instructions and is colored by an argumentative tinge. More important, it omits an element vital to a finding of contributory negligence. The essence of contributory negligence is the plaintiff's failure to exercise reasonable care for his own safety. The instruction, however, does not require a finding that Mason was negligent. Its pivotal condition is that "plaintiff Mason had his choice" in placing and fastening the ladder. The existence of an abstract choice is not enough. Perhaps, in drafting the instruction, the defense meant to imply a further condition, that the choice was so exercised as to constitute lack of reasonable care. The instruction, however, does not say so. Literally, it demands a defense verdict if Mason "had his choice." Counsel do not refer us to other instructions which might have had a curative effect. The challenged instruction was erroneous.

Plaintiff complains that eight instructions on contributory negligence were given to the jury, creating an overemphasis on that subject. Actually, two of the eight instructions were submitted by the plaintiff. There is no necessity for a numerical balance between instructions favoring one party or the other. (*Gress* v. *Rousseau, supra,* 204 Cal. App.2d at p. 154.) The trial judge gave the jury the standard instructions on negligence and read a number of Labor Code provisions prescribing an employer's duty to provide safe working conditions. Viewed in relationship to the latter, the instructions on contributory negligence created no undue emphasis favoring the defense and could not have led the jury to believe that the court was favoring one side as against the other.

As though it were a rule of law, several courts have stated that an employer is not liable for failure to provide a safe place to work where he simply gives the employee a

general task without specific direction as to the manner of accomplishment, leaving the manner in which the work is to be done and the appliance to be used to the employee's choice. (*Albert* v. *McKay & Co.*, 174 Cal. 451 [163 P. 666]; see also *Baez* v. *Southern Pac. Co.*, 210 Cal.App.2d 714, 718 [26 Cal.Rptr. 899]; *Decker* v. *S. H. Kress Co.*, 168 Cal.App.2d 365, 368 [335 P.2d 952, 337 P.2d 163].) Kattenhorn contends that, under uncontradicted evidence, this "rule" immunizes him from liability as a matter of law. He points out that if the ladder was placed on spilled oil and filings, it was Mason who directed its placement at that point, Mason who selected the ladder without overhangs from the two sections available to him, Mason who could have directed Moore to hold the base of the ladder. The argument, however, overlooks a qualification upon the rule, that is, that the employee's choice of the dangerous method must be the sole cause of the injury. (*Smith* v. *Southern Pac. Co.*, 138 Cal.App.2d 459, 464 [292 P.2d 66].) It overlooks the fact that Kattenhorn in his statutory role as "*employer*" made that particular ladder available to plaintiff. If the jury, as it was entitled to do, had found that Kattenhorn had violated Safety Order No. 3362 in making that ladder available and that this violation was a proximate cause of the accident, then plaintiff's choice of an unsafe place or instrumentality would not be the sole cause. If Kattenhorn had violated the safety order, Mason's freedom to choose precise locations and to choose one ladder section over another would not absolve the former from liability as a matter of law.

The argument comes close to an assertion that plaintiff Mason was contributorily negligent as a matter of law. It is not necessary to find contributory negligence as a matter of law in order to affirm the judgment. Errors in instructing the jury have required us to examine the record and to evaluate the evidence to determine whether a miscarriage of justice occurred. (Cal.Const., art. VI, § 4½; *Davis* v. *Ward*, 219 Cal.App.2d 144, 151 [32 Cal.Rptr. 796].) After examining the record, we have concluded that the errors were not prejudicial. The evidence on the subject of contributory negligence is not close; rather it is heavily weighted against plaintiff. Although Mason was a new employee in the shop of Westside Tractor Company, he had had many years of shop experience. He had available to him a ladder section which had metal attachments which would have prevented the downward sliding of the ladder; instead he chose a section

without such attachments. Moore had been assigned to assist Mason in any way the latter might choose. He could have instructed Moore to hold the base of the ladder, but did not do so. He testified that he did not look at the floor where the ladder was placed. If, as he testified, the ladder was actually placed where oil and metal filings had been spilled, Mason had not only directed the location of the ladder at that point but had created the mess himself. The placement of the ladder was within his complete control and means of preventing slippage were available to him. Had he exercised such means the accident would not have happened. Absent such means, slippage of the ladder was entirely foreseeable. Under these circumstances there is no reasonable probability that a retrial would result in a plaintiff's verdict.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.