[Civ. No. 10232. Third Dist. Dec. 14, 1962.]

WESLEY RAY CRAVENS, Plaintiff and Appellant, v. BOB KURTZ et al., Defendants and Respondents; ARGONAUT INSURANCE COMPANY, Intervener and Appellant.

P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Reginald M. Watt for Plaintiff and Appellant.

Partridge, O'Connell, Partridge & Fall, Robert G. Partridge, Jr., John A. Spann and George Brunn for Defendants and Respondents.

Hanna & Brophy for Intervener and Appellant.

SCHOTTKY, Acting P. J.—Wesley Ray Cravens and Argonaut Insurance Company, plaintiff in intervention, appeal from a judgment of nonsuit in favor of Bob Kurtz and from a judgment on the merits in favor of Fred Dohle in an action brought by Cravens to recover for personal injuries.

It appears from the record that Ray Cravens, plaintiff, was employed as an equipment operator by Fredrickson & Watson Construction Company. His immediate foreman was Fred Dohle, the superintendent in charge of the project on which Cravens was working. On the day of the accident Cravens was working as a "sheep's foot tamper operator." To do this

job he operated a D-8 Caterpillar tractor. At the end of his shift Cravens was instructed by Dohle to use the tractor to push brush which consisted of tree stumps and limbs of varied sizes up to, according to some testimony, 18 feet in length. While Cravens was performing this task, one of the tree stumps was caught by the blade on the tractor and flipped up and arced down on plaintiff's left arm which he had thrown up to protect himself. The arm was crushed against the armrest on the tractor. Serious injuries were incurred and as a result Cravens' lower arm was amputated.

Cravens contends that the operation was governed by subdivision (b), section 3403, title 8 of the California Administrative Code (General Industry Safety Orders) which reads: "Every tractor which is subjected to the hazards of falling trees, sidewinders, brush and limbs shall be equipped with a canopy guard designed, constructed and installed for the purpose of protecting the operator against such hazards. This canopy guard shall be strongly constructed to afford adequate protection. . . ."

Cravens based his cause of action upon the theory that defendants were negligent in failing to provide the tractor with a canopy which he asserted would have prevented the injury to him.

Argonaut Insurance Company, the workmen's compensation carrier, alleging itself to be a necessary and proper party to the action, intervened as a plaintiff to recover medical payments and other workmen's compensation benefits paid to Cravens on account of his injury if Cravens were successful in his suit.

The first contention urged by appellant is that the court erred in granting the nonsuit in favor of Kurtz. We have concluded that this contention must be sustained.

The record shows the following testimony by Kurtz: "Q. Who in the Fredrickson & Watson firm was responsible for safety of the men? A. I would say that everybody in Fredrickson & Watson's employ, including the officers of the company, were responsible for the safety of the men. We all worked that way. Q. Specifically were you responsible for the safety of the men under your general supervision? A. I would not say that, no. Q. Well, what would you say? A. I would restate my answer to your last question, that everybody employed and the officers of the company are responsible for all the men working for us. Q. Then you did have responsibility for safety of the men under your direction? A. Along

with the rest of the people, yes sir. Q. Who in the organization had the responsibility to be informed correctly on the subject of safety orders for equipment under your direction and control? A. We have an attorney for one of the plaintiffs here who had what they call their safety engineers in the area who covered our jobs monthly or weekly and they were the ones that wrote a report on our jobs, all jobs, and we took care of everything that the plaintiff who is now suing me personally, we took care of every order and that is a matter of record. That can be brought up. But the plaintiff's man made a canvass of this area at least once a month. He was our safety engineer.''

As stated by this court in *Jackson* v. *Georgia-Pacific, Inc.,* 195 Cal.App.2d 412, 416-418 [15 Cal.Rptr. 680]: ''As pointed out in *Towt* v. *Pope,* 168 Cal.App.2d 520 [336 P.2d 276], if coemployees were to be regarded as employers they would be subject to the duties and obligations of the master without benefit of the economic rewards which could be obtained from the enterprise and therefore, such a construction of section 6304 of the Labor Code was obviously unfair and could not have been within the contemplation of the Legislature when it adopted its definition of an employer, as set forth in that section.

''However, that is not to say that a supervisory employee may not be liable to a coemployee working under him.

''The rule which makes one employee liable to another employee for injuries occasioned by the former's negligence while both are engaged in a common employment is predicated upon the duty which one owes to the other. (35 Am.Jur. 956.) Or, as stated in 20 American Law Reports 155: '. . . the fundamental question which must ultimately furnish the rule of decision in this class of cases is whether or not a servant owes a duty to the person injured. If he does, he is liable; if he does not, he is not liable.'

''Defendants, however, contend that such duty relates only to acts of misfeasance and not to nonfeasance; hence, the court was correct in the instruction which it gave to the jury. We are inclined to agree with plaintiffs that such a distinction is both invalid and immaterial. We find nothing in the Towt case to the contrary. There the court held that if the manager Pope was to be held for negligence it must be based on 'his failure to perform a duty.' (*Towt* v. *Pope, supra,* p. 530.)

''It should be noted that what we have said heretofore is not to be confused with the duty of the true employer to maintain

a safe place of employment. What we refer to was the duty of Lisbon, Nugent, and Roberts to make certain the decedent was not required to work in an unsafe place. Mechem on Agency states the rule as follows:

"'So the managing agent of a lumber company having full charge and control of its mill and machinery and in assigning employees to work at various machines, is personally liable for an injury caused by setting an inexperienced and ignorant employee at work upon a dangerous machine.

"'So an agent having complete control and management of a mine with power and authority to do whatever is reasonably necessary to prevent injury from its operation is personally responsible for an injury caused by his neglect to take necessary precautions against the accumulation of dangerous gas therein.' (Mechem on Agency [2d ed.] sec. 1477, p. 1097.)

"'We find nothing to the contrary in the cases of this state cited by defendant. In fact, no case has been cited by either party which is directly in point or which commits this state to either rule. The cases from other jurisdictions which have dealt with this question appear to be fairly evenly divided. (See generally 35 Am.Jur. 956, 957; 57 C.J.S. 347; and 20 A.L.R. 152.) However, '. . . they are in quite general accord that the negligent servant is liable so long as the duty to the other servant exists.' (99 A.L.R. 424.) Illustrative of the rule, the annotation cites the case of *Givens* v. *Savona Mfg. Co.* (1928) 196 N.C. 377 [145 S.E. 681], where it was held that:

"'The superintendent and foreman of a cotton factory are jointly liable with their employer for damages in case of injuries to another employee as a result of their negligence (1) in failing to exercise due care to provide for him a reasonably safe place in which to work; (2) in ordering and requiring him to work in such place when they knew it was not a safe place; and (3) in failing to instruct him with respect to the dangers incident to the work.'"

In view of the decision of this court in *Jackson* v. *Georgia-Pacific, Inc.*, *supra* (which was decided after *Towt* v. *Pope* relied on by the trial court in granting the nonsuit as to Kurtz), we believe that the jury could determine that Kurtz was guilty of negligence in breaching his common-law duty in failing to provide Cravens with proper equipment to do the job. There is evidence that Kurtz was the superintendent in charge. As such, he owed a duty to all employees to see that they did not use improper equipment. Therefore the

court erred in taking from the jury the right to determine whether or not under all of the evidence there was negligence on the part of Kurtz which was a proximate cause of the injuries to Cravens. Under familiar and well-settled rules relating to the granting of nonsuits the granting of the nonsuit was error.

██ Appellant Cravens makes the further contention that the trial court erred in not permitting appellant to show that Argonaut Insurance Company, plaintiff in intervention, had hired Mr. Partridge as defense counsel under a complete reservation of rights under a policy issued to Fredrickson & Watson. The defendants also independently employed co-counsel, John Spann. The participation of Argonaut as plaintiff in intervention was limited. Argonaut merely showed that it had made compensation benefit payments to Cravens. Counsel for Argonaut did not cross-examine witnesses or other-wise participate in the case. The trial court refused to permit Cravens to show that Argonaut hired Mr. Partridge for the following reasons:

1. Argonaut did not owe Cravens a duty to loyalty but rather owed it to Kurtz and Dohle.

2. Argonaut had not taken advantage of its dual position to embarrass or impede Cravens' case.

3. Disclosure of the dual position would not only violate the general rule of nondisclosure of insurance coverage but would saddle the respondents with a charge of dishonesty on the part of the respondents.

██ Appellant Cravens contends that because there was testimony that plaintiff in intervention had its own safety engineers who made inspections of the working conditions at the site of the accident, and because neither of these reports of the safety engineers was produced, the jury could speculate that plaintiff in intervention was suppressing evidence. There is no showing that counsel for Cravens was ever refused access to any of its information or that plaintiff in intervention would not produce the safety engineers upon request.

Appellant's argument is based on the alleged failure of respondents to have Argonaut's safety engineers testify, particularly one such engineer, Brown, who was subpoenaed by defendants and not called. However, it is not disputed that Brown was in the courtroom and there was nothing to prevent appellant from calling him. It is difficult to understand

how the failure of defendants to call Brown as a witness must necessarily be considered suppression of evidence. Furthermore, plaintiff's counsel in his argument to the jury laid considerable stress upon defendants' failure to call Brown, stating: ". . . And the defense, remember, not Mr. MacDonald, the defense subpoenaed and brought him here into the courtroom and had here in the courtroom the one person perhaps who could give us the full story on what Mr. Dohle was told about these safety orders. And they subpoenaed him, brought him into the courtroom and didn't put him on the stand."

In his order denying plaintiff's motion for a new trial the trial judge stated: "Plaintiff suggests that he was in some manner prejudiced by the fact that an employee of plaintiff in intervention was not called by defendant. To that, there are two obvious rejoinders. The first is that if plaintiff actually wanted to know what the man would say, nothing prevented plaintiff from calling the witness; and the second is that any unfavorable inference that might be drawn from the fact that defendant did not call him was drawn and was argued, namely, that they dared not. And any good that the jury might derive therefrom presumably was derived."

We do not believe that we would be justified in holding that the court erred in not permitting appellant to show that the intervener, Argonaut Insurance Company, hired Mr. Partridge as defense counsel. The trial court was of the opinion that prejudicial effect of such testimony would outweigh its probative value. What is said in Witkin's California Evidence, section 112, at page 134 is apropos:

"Uniform Rule 45 states the modern policy rules, emphasizing the judge's discretion in their application: 'Except as in these rules otherwise provided, the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered.'

"The Comment reads: 'This applies to frequently arising situations where the trial may get out of hand by the injection of collateral issues having only slight probative value

and which would tend to confuse the jury, or have illegitimate emotional appeal. Obviously the judge should have some discretion to prevent the trial from going off on tangents of relative unimportance. . . .' ''

For the reasons hereinbefore set forth the judgment of nonsuit in favor of Bob Kurtz is reversed and the judgment on the merits in favor of Fred Dohle is affirmed.

Pierce, J., concurred.

A petition for a rehearing was denied January 9, 1963, and the petitions of plaintiff and appellant and of defendants and respondents for a hearing by the Supreme Court were denied February 6, 1963. Peek, J., did not participate therein.