[Crim. No. 15397. Second Dist., Div. Two. Sept. 2, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID
 MORRIS VESSELL, Defendant and Appellant.

Albert D. Silverman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark L. Christiansen, Deputy Attorney General, for Plaintiff and Respondent.

WRIGHT, J.—This is an appeal from a judgment of conviction of violations of Penal Code section 211 (robbery) and of Penal Code section 245 (assault with a deadly weapon).

By information defendant David Morris Vessell was charged in count I with a violation of Penal Code section 211 (robbery) and with being armed with a deadly weapon at the time of the commission of the offense, and in count II with a violation of Penal Code section 217 (assault with intent to commit murder). Defendant pleaded not guilty to both charges.

Defendant made a motion to suppress identification evidence by reason of the fact that he had been denied counsel at police lineup. The court, sitting without a jury, heard testimony from three witnesses called on behalf of defendant and from an equal number of witnesses called on behalf of the People. After an extensive hearing and after argument by

counsel, the motion to suppress was denied and the cause proceeded to jury trial. Defendant was found guilty of count I and the jury fixed the offense as robbery in the first degree and further found that defendant was armed with a deadly weapon at the time of the commission of the offense. The jury also found defendant guilty of an assault with a deadly weapon, a lesser but necessarily included offense to that charged in count II. Motion for new trial and probation were denied. Defendant on count I was sentenced to the state prison for the period prescribed by law. On count II, the court ordered that the proceedings be suspended. Defendant appeals the judgment of conviction.

### DEFENDANT'S CONTENTIONS

Although defendant sets forth five separate contentions, the same may be condensed into the following two issues:

1. That the identification procedures were violative of the constitutional rights of defendant; and

2. That defendant was subjected to double punishment by reason of the armed recitation contained in the judgment.

### STATEMENT OF FACTS

The case was essentially one of the reliability of prosecution identification witnesses and the propriety of identification procedures. For that reason a complete statement of the facts need not be incorporated at this point. Those portions of the evidence which relate to the identification issues will be set forth separately.

Defendant was one of two men who shortly before 9 p.m. on November 26, 1967, robbed the Hasty House Restaurant in West Los Angeles, of approximately $2,000. The defendant was armed with a rifle at the time of the commission of the offense, his colleague with a hand gun. In the course of the robbery, the manager, Warren Locke, was grazed on the head by a bullet fired by the individual who carried the hand weapon. Locke, upon defendant's command, accompanied the defendant from the kitchen area to the office and opened the safe. Defendant took the money contained therein and ordered Locke to obtain and deliver to him the bags of money which had been placed under the counter. Other employees were present at the time of the robbery and were required to lie down on the floor in the kitchen area.

Defendant was arrested on November 28, 1967, by Officer Dennis S. Adams of the Los Angeles Police Department. At the time of his apprehension, defendant identified himself as ''Charles Jackson'' and ''Charles Jefferson.''

Defendant took the stand on his own behalf and testified that at the time the robbery occurred he was at the home of the mother of his common law wife. He called four witnesses in support of his defense of alibi.

## EVIDENCE RELATING TO IDENTIFICATION

The defendant had been described to the police by witnesses who were present at the scene of the robbery as being a member of the Negro race. Officer Cecil L. Larsen of the Los Angeles Police Department on two occasions displayed sets of photographs of male Negroes (all of whom appeared to be between the ages of 20 and 35) to several of the witnesses at the Hasty House.

Larsen's first visit was on November 28, 1967, and several witnesses were separately shown a group of seven or eight photographs, none of which depicted the defendant. No witness could recognize any of the individuals in the pictures as being one of the persons who had perpetrated the robbery.

On November 29 or 30, Larsen made another visit to the Hasty House and had in his possession a second set of six to eight photographs, at least one of which was of the defendant. Locke, after making a careful examination, identified the defendant in one of the photographs as being one of the robbers. The police made no suggestions with respect to identification. Locke, who later attended a police lineup where he identified defendant, was certain as to the identity of the defendant from his rather prolonged encounter with him at the Hasty House, from photographs of him and from in-court identification. Locke at trial before the jury was not asked if his attendance at the lineup in any way aided the in-court recognition of the defendant.

Curtis Kent Woods, an employee of the Hasty House, and a witness to the robbery was shown the second group of pictures and he also recognized the photograph of the defendant as being a likeness of one of the robbers. The police made no statement to him that an arrest had been made, nor were any of the other witnesses present when he made the identification. Woods also later attended a police lineup and had no difficulty in picking out the defendant as one of the robbers. Woods in the trial before the jury identified the defendant as one of those involved in the robbery.[1]

---

[1] Woods on cross-examination testified as follows: ''Q [By defense counsel, Edgar Gilmore.] Now, sir, in comparing the appearance of Mr. Vessell with the impression you have of what the robber looked like at the Hasty House, did participating in the line-up at University Station

Ruth Stockwell, also an employee of the Hasty House, and present when the robbery occurred, picked out the photograph of the defendant from the second set of pictures. No other witness was present when she made the identification and the police asked her to look through the group of photographs and determine if she could recognize any of the persons portrayed. Stockwell also later attended a police lineup where she identified the defendant, and also made an in-court identification of the defendant.[2]

Connie Johnson, also an employee of Hasty House and who was present at the time of the robbery, testified that the defendant "looked like" the man she saw that evening with the long shotgun or rifle. She also examined the second group of photographs and informed the officer that one of the pictures "looked like" the defendant.[3] It was in fact a photograph of the defendant.

### IDENTIFICATION ISSUES

This case presents three identification issues which are as follows:

1. The photograph identification;
2. The police lineup identification; and
3. The in-court identification.

Each issue will be dealt with separately.

### THE PHOTOGRAPHIC IDENTIFICATION

The facts of the cause before this court are remarkably similar to those set forth in the controlling case of *Simmons* v. *United States*, 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967], decided by the Supreme Court of the United States in 1968. After a robbery of a federally insured building and loan association, five employees who were witnesses to the crime

---

help you to refresh your recollection or aid you in any way? A I can see it refreshed my memory. Q Did what you saw at the line-up at University Station, would you say that was a help to you being able to sit here in court today to say Mr. Vessell is the robber? A Yes."

[2] On cross-examination Stockwell testified as follows:

"Q BY MR. GILMORE: Mrs. Stockwell, in looking at the defendant here in court today and recognizing his present appearance and remembering back to the time of the robbery and remembering what the robber looked like, would you say that having participated in a lineup where you saw the defendant in the flesh had helped you in saying in court today this is the man? A Well, you get a longer look but a person's eyes and forehead and things of that type doesn't change. Q My question is: Was the lineup some help to you? A No, no. Q The lineup didn't help you at all? A Not at all."

[3] Johnson's testimony can best be summed up by an answer given on cross-examination, "I cannot say positively that [the defendant] is the man. I can only say that it looked like him."

were shown separately snapshots consisting mostly of two of the defendants and other individuals. Each of the witnesses identified the defendant Simmons as one of the robbers. Later an indeterminate number of pictures were shown to the witnesses and again all identified Simmons. On appeal Simmons asserted "that his pretrial identification by means of photographs was in the circumstances so unnecessarily suggestive and conducive to misidentification as to deny him due process of law. . . ." (*Simmons, supra,* at p. 381 [19 L.Ed.2d at p. 1251].) Mr. Justice Harlan, speaking for the court, set forth the standard to be followed in pretrial photographic identification: ". . . we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons, supra,* at p. 384 [19 L.Ed.2d at p. 1252].)

▮ Applying the standard to the cause before us, we are of the opinion that the defendant's claim must fail. A serious offense had been committed and at the time the first set of photographs was shown to the witnesses, the perpetrators of the crime had not been apprehended. Under the circumstances there was little or no likelihood that the procedure used resulted in a misidentification of the defendant. The robbery took place on the night of November 26. Neither of the robbers wore masks. At least four employees of the Hasty House were able to observe the defendant and one witness, Locke, was required at gun point to accompany the defendant from the kitchen area to the office, open the safe, stand by as defendant removed the currency, proceed to another area of the restaurant and return and deliver to the defendant the bags of money. Locke saw the defendant face to face for about five minutes and he saw the defendant from as close as one foot in the very bright lighting.

The first group of photographs was shown to the witnesses within a day and a half of the robbery. The second group was displayed a day or two thereafter. This was close enough to the time of the commission of the crime for the witnesses' memories to still be fresh. All individuals who were depicted were members of the same race as defendant and were generally within the same age bracket. Some shown wore a "natural" or Afro-American hair style and some had hair

that had been processed or straightened. Each witness made a separate and independent identification of the. defendant. There was no evidence that the police in any way suggested which persons in the pictures were likely suspects.

The initial identifications were confirmed by the witnesses who at trial identified the defendant. Taken together the circumstances leave no doubt that the witnesses correctly identified the defendant as one of the perpetrators of the crime. As stated in *Simmons, supra,* at pp. 385-386 [19 L.Ed. 2d at p. 1254], ''[t]aken together, these circumstances leave little room for doubt that the identification of Simmons was correct, even though the identification procedure employed may have in some respects fallen short of the ideal.'' We, likewise, hold that the defendant in the cause before us was not denied due process of law by reason of the photograph identification procedures.[4]

### THE LINEUP IDENTIFICATION

■ Two police lineups took place in early December of 1967, almost six months after the cut-off date established in *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]. The evidence did not furnish us with any clue as to why the defendant was denied his right to have counsel present at this identification procedure nor was there any evidence which could be construed as a waiver of such right. Any evidence garnered at the lineups was clearly inadmissibe upon constitutional grounds.

There was, however, no impropriety in bringing the evidence before the trial judge in the absence of the jury. The record reflects that the court permitted a thorough examination of the witnesses to ascertain whether the in-court identification of the defendant was ''tainted'' by the police lineup procedures. The court ruled that the identification was not ''tainted'' and the three witnesses who had viewed the police lineups were permitted to testify. ''To overcome the effect of the taint, the People must now on *voir dire* show by clear and convincing proof that the in-court identifications were based upon observations of the accused at the scene of the robbery.'' (*People* v. *Caruso,* 68 Cal.2d 183, 189 [65 Cal.Rptr. 336, 436 P.2d 336].)

''The phrase 'clear and convincing evidence' has been defined as 'clear, explicit, and unequivocal,' 'so clear as to leave no substantial doubt,' and 'sufficiently strong to

---

[4]See footnote 6 at page 386 of *Simmons* v. *United States, supra* [19 L.Ed.2d at p. 1254], for Supreme Court's suggestions as to increasing reliability of identification procedures.

demand the unhesitating assent of every reasonable mind.' " (*In re Jost,* 117 Cal.App.2d 379, 383 [256 P.2d 71]; *People* v. *Caruso, supra,* at p. 190.) The prosecution had the burden of producing through the victims the requisite level of proof. This was accomplished outside of the presence of the jury.

At the trial before the jury the prosecution on direct examination of the three witnesses who had been present at lineups made no reference whatsoever concerning the police lineup. The defendant chose to put the issue before the jury although there was no compulsion so to do. This was the prerogative of the defense. "If the trial court decides that the lineup was fair, defendant may nevertheless offer, before the jury, such evidence of unfairness as he can produce. This would affect the weight, rather than the admissibility of the identification. (Evid. Code, § 406.) " (*People* v. *Douglas,* 259 Cal.App.2d 694, 698 [66 Cal.Rptr. 492].) The testimony of two of the witnesses (Locke and Stockwell) was clear and unequivocal that their identification of defendant was based upon their initial observation of him. The third witness, Woods, on direct examination testified that he was "positive" that the defendant was the individual whom he saw from a distance of two to three feet at the Hasty House on the night of the robbery. He also picked out a photograph of defendant when shown the two groups of pictures. Woods was subjected to intensive cross-examination and conceded that the lineup was of help in refreshing his memory as to the identification of defendant. If the testimony of Woods was the only evidence which placed the defendant at the scene of the crime, the judgment of conviction could not be sustained. However, the concession of Woods that his memory was refreshed by the lineup would not constitute error beyond a reasonable doubt and would not require a reversal in this case (see *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]) in view of the very substantial additional evidence of defendant's guilt.

### THE IN-COURT IDENTIFICATION

██ In court before the jury four witnesses identified the defendant as one of the perpetrators of the crime. One of the four (Johnson) testified to the effect that the defendant "looked like one of the robbers" but such evidence would go to the weight and not to the admissibility of her testimony. Two witnesses, Locke and Stockwell, expressed no doubt whatsoever as to the identity of the defendant. The fourth, after a positive identification of the defendant, qualified his

testimony to the extent that his memory had been refreshed by attendance at the lineup.

There was ample substantial evidence to support the conviction. The trial judge was assiduous in protecting the rights of the accused, permitting counsel for defendant to cross-examine the People's witnesses without limitation. The case was fairly tried and the jury was properly instructed. Essentially it was a question of the reliability of identification witnesses and the truthfulness of defense alibi witnesses who frequently contradicted each other and occasionally contradicted themselves. The jury chose to believe the former and to disbelieve the latter. There were many conflicts in the evidence but as stated in *People* v. *Lara,* 67 Cal.2d 365, 392 [62 Cal.Rptr. 586, 432 P.2d 202], ". . . to the extent that the relevant evidence is in conflict, the resolution of the triers of fact below, which was made under correct rules of law, will not be disturbed on appeal. [Citation.]"

### DOUBLE PUNISHMENT ISSUE

Defendant contends that he was subjected to double punishment as proscribed by section 654 of the Penal Code by reason of the fact that the judgment contained a recitation that he was armed with a deadly weapon at the time of the commission of the offense. The recent case of *People* v. *Floyd,* 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], filed August 20, 1969, disposes of this issue and requires that the judgment of conviction be modified to provide that at the time of the commission of the offense sections 3024 and 12022 of the Penal Code were inapplicable but defendant was armed within the meaning of section 1203 of the Penal Code. The judgment must also specify the nature of the weapon.

The cause is remanded for resentencing in accordance with the views expressed in *People* v. *Floyd,* 71 Cal.2d 879, filed August 20, 1969. In all other respects the judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied October 1, 1969, and appellant's petition for a hearing by the Supreme Court was denied November 12, 1969. Peters, J., was of the opinion that the petition should be granted.