[Crim. No. 7468. First Dist., Div. Two. Feb. 10, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL BRUCE WENDLING, Defendant and Appellant.

## COUNSEL

Philip M. Schafer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Timothy G. Laddish, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SHOEMAKER, P. J.**—Defendant appeals from a judgment convicting him of a violation of section 245, Penal Code (assault by means of force likely to produce great bodily injury).

The record shows that in the early morning hours Clara Nelson, an elderly woman confined to bed with a broken hip, was choked into unconsciousness by an intruder who entered the duplex in which she was sleeping alone.

The victim was discovered about 6:20 a.m. by her daughter, Marie Dusenbury, who shortly thereafter telephoned the landlord, the doctor, and the police.

Dr. Thomas received the daughter's call about 6:40 a.m. and examined the victim about 7 a.m. He noted that the victim's eyes were black and blue and almost swollen closed, but that she could see and recognize the doctor. He also noted tender lower ribs and areas on her neck that were black and blue. The marks on her neck suggested heavy trauma. He ex-

cluded the possibility of a fall, and considered the bruises compatible with a strangulation.

The police officer who responded testified that both of the victim's eyes were blackened, there were marks on her throat and blood coming out of her right ear. The victim described her assailant as "foreign looking and that he wasn't too tall, stocky, and that he reminded her of Don Ho."

The following day a police officer visited Mrs. Nelson at the hospital and showed her a set of 10 photographs. Two days later she was shown another set, and a week later a third set. Wendling's photograph appeared in the first group once, and in each of the remaining groups twice. On all occasions the victim identified each photograph of defendant as that of her assailant. No lineup was conducted nor was defendant viewed by the victim at any time while he was in custody.

At trial, Mrs. Nelson made a positive in-court identification of the defendant. Her words were, "I would swear on a stack of bibles it was him."

Evidence of the victim's identification of the defendant through the photographs was received at the trial without objection, and the photographs were received in evidence without objection.

The defense was alibi, and the defendant took the stand to testify in his own behalf and presented numerous witnesses to support his claim that he had spent the night and early morning hours drinking in bars and visiting with friends.

On appeal, defendant contends (1) that he was denied the right to counsel during pretrial identification by photograph; (2) that the pretrial identification by photographs was so impermissibly suggestive as to deny him due process of law; (3) that the failure of his attorney to seek to exclude that evidence and the in-court identification of the defendant by the victim was a denial of his right to the assistance of effective counsel. We do not agree with any of these contentions.

We deal with the contentions in order.

We note that the pretrial identification by photograph took place in the instant case subsequent to June 12, 1967, the date of the decision in *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]; and *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967].

In the recent case of *People* v. *Fowler* (1969) 1 Cal.3d 335 [82 Cal.Rptr. 363, 461 P.2d 643], two of the prosecution witnesses made an in-court identification of the defendant as the robber, *identified photographs of the*

*defendant they had selected from the police files the day after the robbery,* which was prior to his apprehension, and recited the lineup at which they identified defendant. The court, at page 350, after reversing the judgment of conviction because evidence of the lineup itself was introduced at trial, gave directions for retrial as follows: "Questions on retrial concerning the admissibility of evidence of pretrial photographic identifications, and the effect of such identifications upon in-court identification, will be governed by the opinion of the United States Supreme Court in *Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967]."

In *Simmons*, the FBI exhibited photographs to bank employees the day of the robbery, and again at later dates five employees identified Simmons. At trial, the Government did not introduce any of the photographs, but relied upon in-court identification of the five eyewinesses, each of whom swore that Simmons was one of the robbers.

After noting that Simmons was relying upon the lineup decisions in *Wade* and *Gilbert*, the United States Supreme Court stated: "Simmons, however, does not contend that he was entitled to counsel at the time the pictures were shown to the witnesses. Rather, he asserts simply that in the circumstances the identification procedure was so unduly prejudicial as fatally to taint his conviction. This is a claim which must be evaluated in light of the totality of surrounding circumstances. See *Stovall* v. *Denno,* 388 U.S. 293, at 302, 18 L.Ed.2d 1199, at 1206, 87 S.Ct. 1967; *Palmer* v. *Peyton,* 359 F.2d 199." (P. 383 [19 L.Ed.2d at p. 1252].)

The court in *Fowler* declined to decide the extent to which the *Wade-Gilbert* rules are applicable to "pretrial confrontations occurring out of the context of a formal lineup," suggesting that the proper determination of whether the *Wade-Gilbert* right to counsel rule is applicable in a particular case will be achieved only by a "careful balancing of the need for a prompt nonlineup identification in light of the circumstances, against the need for and ability of counsel to help avoid erroneous identification." (*People* v. *Fowler, supra,* fn. 16, pp. 344, 345.) ■ In the light of the *Fowler* decision, we do not believe the *Wade-Gilbert* right to counsel attaches to photographic identification prior to the time defendant is taken into custody.

We agree with the Attorney General's argument that it would be impractical to appoint and invite to the hospital an attorney for each of the men pictured in the photographs presented to Mrs. Nelson in her hospital room. In *People* v. *Short* (1969) 269 Cal.App.2d 746, at page 747 [75 Cal.Rptr. 156], the court stated: "It is difficult to imagine how he could have had an attorney represent him during this stage of investigation, while he was still at large and undoubtedly hoping to remain at large. . . . Under these circumstances Short did not have the right to counsel's presence at the photo-

graphic identification." (See also *People* v. *Weathers* (1969) 274 Cal.App. 2d 232, 240 [79 Cal.Rptr. 127].)

We are satisfied that defendant had no right to counsel at the time Mrs. Nelson made the first identification of defendant by photograph in her hospital room. ■ As to the subsequent viewings made at a time defendant was in custody, there is nothing in the record that suggests or supports any unfairness in respect thereto. Further the second viewing was held at the suggestion of defense counsel. The positive identification having been made in the first presentation, the second and third showings were merely cumulative.

■ We now deal with defendant's second contention that the pretrial identification by photograph was so impermissibly suggestive as to deny defendant due process of law.

The *Simmons* case was decided in March 1968, and was the applicable law at the time of the trial of the instant case, which was held in July 1968.

In *Simmons,* the court recognized that the procedure of initial identification by photograph was used widely and effectively in criminal law enforcement, "from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs." The court ruled as follows: "We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convicions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons* v. *United States, supra,* 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967].)

Applying the standard set forth in *Simmons* to the instant case, defendant's claim must fail.

The record shows that the initial identification of defendant from photographs shown her by the police was made by Mrs. Nelson on the day following the assault, in her hospital room, and that she immediately picked the defendant as her assailant when she reached the fourth or fifth photograph in the group of photographs. The second time she had "no trouble at all" in picking out the defendant; and although the third time she "had to go farther," she testified at trial that "when I found them I picked them

out." On all three occasions she identified the photograph of defendant as that of her assailant.

She testified that she knew him "[a]s soon as I saw him" at the preliminary, and she made a positive in-court identification: "I would swear on a stack of bibles it was him."

There is no evidence to indicate that the police in any way suggested which persons in the pictures were under suspicion. Despite a vigorous cross-examination, Mrs. Nelson displayed no doubt about her identification of the defendant. Factors such as these were considered in the *Simmons* case.

■ We do not agree with defendant's final contention that he was denied the right to the assistance of effective counsel. ■ When a defendant asserts that his constitutional right to adequate representation by competent counsel has been violated, the burden of sustaining the allegation rests upon him. Defendant must show that acts of omission of counsel resulted in withdrawal of a crucial defense from the case. (*People* v. *Hill* (1969) 70 Cal.2d 678, 689 [76 Cal.Rptr. 225, 452 P.2d 329].)

Defendant contends that his counsel should have objected to the admission of evidence of pretrial identification by the victim and should have required the prosecution to show on *voir dire* that the in-court identification was based upon an independent source, and further, that defense counsel permitted the defendant to testify in his own defense and thus subjected the defendant to impeachment as a convicted felon.

■ Defendant's contentions do not approach the test for constitutionally inadequate representation by counsel set forth in *People* v. *Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35]: "To justify relief on the ground of constitutionally inadequate representation of counsel, ' "an extreme case must be disclosed" [Citations]. It must appear that counsel's lack of diligence or competence reduced the trial to a "farce or a sham." [Citations.]' (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) Defendant has the burden, moreover, of establishing his allegation of inadequate representation 'not as a matter of speculation but as a demonstrable reality.' (*Adams* v. *United States* ex rel. *McCann* (1942) 317 U.S. 269, 281 [63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435]; accord, *People* v. *Robillard* (1960) *supra*, 55 Cal.2d 88, 97 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].)"

■ Since defendant had no right to representation by counsel at the initial photographic identification, and the identification procedures were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, defense counsel's failure to object to Mrs.

Nelson's in-court identification did not result in a withdrawal of a crucial defense from the case. The United States Supreme Court in the *Simmons* case commented: "The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." (P. 384 [19 L.Ed.2d at p. 1253].)

Defense counsel vigorously cross-examined the victim and the police officers who exhibited the photographs, and the jurors had before them as exhibits all three groups of photographs shown to the victim and could evaluate for themselves the fairness of the procedure.

Defense counsel indicated an awareness of his defenses when at a very early stage in the proceedings he refused to permit defendant to be present in a lineup, and at the time of plea objected for the record to the identification made of the defendant by the victim.

As to defendant's criticism of his being permitted to testify, defense counsel presented 11 witnesses to support an alibi defense on the part of the defendant, and the decision to testify was no doubt a tactical decision in which defendant had a part. In the heat of trial, counsel is best able to determine proper tactics and "[e]xcept in rare cases an appellate court should not attempt to second-guess trial counsel. [Citations.]" (*People* v. *Hill, supra,* pp. 689-690.)

The defendant was fairly tried, and finding no merit in his contentions on appeal, the judgment is affirmed.

Agee, J., and Taylor, J., concurred.

A petition for a rehearing was denied March 12, 1970, and appellant's petition for a hearing by the Supreme Court was denied April 22, 1970.