[Crim. No. 10003. First Dist., Div. Two. Oct. 27, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS GREGG HOLT, Defendant and Appellant.

**COUNSEL**

Sheldon Portman, Public Defender, and Leonard P. Edwards, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Joyce F. Nedde and Charles R. B. Kirk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KANE, J.**—Defendant Thomas Gregg Holt (aka Thomas Summers) appeals from a judgment of conviction entered on a jury verdict finding him guilty of first degree robbery (Pen. Code, §§ 211 and 211a).

The relevant facts indicate that on February 10, 1971, at about 12:55 a.m., appellant entered the Los Gatos Lodge and asked the night clerk, Mr. Louis R. Pierce ("Pierce") about the price of a room. Pierce indicated that the rooms were rented at $14.70. Appellant hesitated for a moment and asked the same question again. When Pierce quoted the price the second time, appellant turned as if reaching for his wallet and then turned back holding a gun in his left hand and said, "Don't do anything. Just give me the money in the till." Pierce emptied the cash register and complied with the demand by producing $426 in twenties, tens, fives and ones. Appellant picked up the money with his right hand and told Pierce to lift up the cash drawer so that he could see what was underneath. Then he ordered Pierce to lie down on the floor with his hands behind his back.

Pierce described appellant to Police Officer Flores as being 5 feet 8 inches tall, between 19 and 23 years old, weighing about 135 pounds. He further indicated that appellant was wearing a light-colored coat and a blue knit cap with a colored band. The cap was pulled down around appellant's ears so that Pierce was unable to see his hair. However, Pierce did notice that appellant had blonde eyebrows and light blue eyes.

Approximately two weeks later, on February 24, 1971, at about 1:15 a.m., Officer Flores was on routine patrol when he noticed a green-and-white 1962 Chevrolet with inoperative brake lights. He stopped the car which contained four young men: Calvin Wadsworth, the driver, appellant's twin brother, Timothy Holt (Summers) ("Tim"), Brian Duckworth, and appellant. During the course of the detention, Officer Flores observed a blue knit cap in the car which seemed to fit the description Pierce had given. He also noticed that appellant seemed to fit the description of the robber. Thereupon Officer Flores, with Wadsworth's consent, searched the car and found a pistol similar to that used in the robbery. Officer Flores handed the pistol to Sergeant Burr who had arrived at the scene. Neither officer could break the pistol down to determine if it was loaded. Appellant, however, stating to the officers that the pistol belonged to his "little brother," broke the weapon down. The officers then transported the four young men to the police station where their photographs were taken.

The identification procedure occurred on three different occasions. On

February 18, 1971, Pierce was shown several sets of photographs; however, he was unable to identify any of the subjects. On March 19, 1971, at the preliminary hearing, Pierce initially identified Tim who, upon the suggestion of appellant's counsel, was seated next to appellant in the jury box and was wearing appellant's green shirt. At the trial Pierce was also unable to tell the difference between the twins. On March 24, 1971, however, when a different set of photographs were shown which included two photographs of appellant and one of Tim, Pierce identified appellant as the robber. In support of appellant's identification as the robber, the prosecution called Sergeant Mathews, of appellant's United States Marines Reserves unit, who stated that appellant was left-handed while Tim was right-handed. Tim, who was also called as a prosecution witness, corroborated Sergeant Mathew's observation with the qualification that both he and appellant had used their right hands in Marine pistol training.

Appellant proffered an alibi defense. He called Jeffrey Wadsworth, Calvin Wadsworth and Mrs. Florence A. Powers (the mother of the Wadsworth brothers) and also elicited testimony from Tim. They all testified that on the evening of the robbery appellant stayed overnight at the Wadsworth home and remained there playing cards or sleeping from about 10 p.m. on February 9, 1971, until about 10 a.m. the next morning. There was also testimony introduced to the effect that the twins had received footlockers shipped back to them after reserve training, appellant's footlocker containing about $500 in cash. Appellant took the stand in his own behalf. He stated that he used his right hand for pistol shooting during his military training. He denied having stated to the police that the pistol belonged to his little brother and insisted that, although he had no prior familiarity with the pistol, he was just able to figure out how to break it down. In rebuttal, the prosecution called Deputy Sheriff O'Brien, who had escorted appellant from the county jail to the preliminary hearing, as a witness. He testified that after Pierce made his mistaken identification, Tim turned to appellant, shook his fist and said: "You planned this all along."

I. *The right to counsel does not extend to post-arrest photographic identification proceedings.*

The record reveals that the photographic identification procedure here employed took place after the preliminary hearing in the absence of counsel while appellant was under arrest. Appellant contends that this procedure violated his constitutional right to counsel. We find no merit in appellant's claim.

Under well established law, photographic, as distinguished from an

actual, lineup is not necessarily a critical stage at which the presence of counsel is required (*Simmons* v. *United States* (1968) 390 U.S. 377, 383 [19 L.Ed.2d 1247, 1252-1253, 88 S.Ct. 967]; *People* v. *Dontanville* (1970) 10 Cal.App.3d 783, 791 [89 Cal.Rptr. 172]). Contrary to appellant's argument which places undue weight on the fact that the photographic lineup took place after the preliminary hearing while he was under arrest and represented by counsel, the rationale of the rule lies in the circumstance that the showing of the photographs of the accused to a witness is not a confrontation or exhibition within the meaning of *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].

Accordingly, the overwhelming weight of authority, including California, holds that counsel's presence is not required when mug shots or other pictures of a suspect already in custody are shown to witnesses, and the right to counsel does not extend to post-arrest photographic identification proceedings. (*People* v. *Lawrence* (1971) 4 Cal.3d 273, 279-280 [93 Cal. Rptr. 204, 481 P.2d 212]; *People* v. *Padgitt* (1968) 264 Cal.App.2d 443, 448-450 [70 Cal.Rptr. 345]; *United States* v. *Ballard* (5th Cir. 1970) 423 F.2d 127, 130-131; *United States* v. *Bennett* (2d Cir. 1969) 409 F.2d 888, 899-900, cert. den. 402 U.S. 984 [29 L.Ed.2d 149, 91 S.Ct. 1670].)

II. *The photographic identification procedure was not unduly suggestive.*

 Claiming that the photographic identification procedure was unduly suggestive, appellant contends that he was denied due process. In support of his position, appellant points out that two of the eight photographs were of appellant; one of the photographs was of appellant's twin brother; appellant and his twin are similar in appearance whereas the others have darker hair and are shorter; and that the photographs of appellant and his "friends"[1] were in color while the others were black-and-white. However, none of these factors would render the photographic procedure unduly suggestive.

 It is a well recognized general rule that a conviction based on eyewitness identification at trial following a pretrial identification by photograph will not be set aside unless the photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification (*Simmons* v. *United States, supra,* at p. 384 [19 L.Ed.2d at p. 1253]; *People* v. *Lawrence, supra,* at p. 280; *People* v.

---

[1] Appellant apparently refers to the photographs of his twin, Calvin Wadsworth and Brian Duckworth, the occupants of the car stopped by Officer Flores on February 24.

*Hawkins* (1970) 7 Cal.App.3d 117, 122 [86 Cal.Rptr. 428]). ▮ It is also settled that a photographic identification is sufficiently neutral where the persons in the photographs are similar in age, complexion, physical features and build (small differences in stature do not matter) (*People* v. *Lawrence, supra,* at p. 280; *People* v. *Hawkins, supra,* at p. 123), and where the photograph of the accused does not stand out from the rest (*People* v. *Bethea* (1971) 18 Cal.App.3d 930, 938 [96 Cal.Rptr. 229]). A photographic identification procedure is not rendered unduly suggestive by the inclusion of two photographs of the accused (*United States* v. *Ballard, supra,* at p. 128; *People* v. *Wendling* (1970) 4 Cal.App.3d 317, 320, 322-323 [84 Cal.Rptr. 310]), or by a mixture of colored and black-and-white photographs (cf. *People* v. *Hicks* (1971) 4 Cal.3d 757, 764 [94 Cal.Rptr. 393, 484 P.2d 65]), or by slight differences in hair color or style (cf. *People* v. *Vessell* (1969) 275 Cal.App.2d 1012, 1017-1018 [80 Cal.Rptr. 617]).

▮ When the photographs are examined in light of the foregoing principles, it becomes immediately apparent that the photographic lineup in the case at bar was not unduly suggestive. Contrary to appellant's assertions, the photographs do not represent persons of greatly disparate heights. The suspects depicted in the photographs are all Caucasian, of a reasonably similar build and within the same age group.[2] The introduction of two photographs of appellant and the picture of his twin brother does not support the claim of suggestiveness, either. Due to the different lighting conditions and camera positions appellant's pictures are almost entirely dissimilar. The fact that the photograph of appellant's twin brother was also included in the identification procedure not only fails to buttress appellant's proposition but directly negates it. It is far too well known to be disputed that the greater the similarity between the accused and others in the photographs, the closer the photographic identification approaches the ideal (*People* v. *Williams* (1970) 11 Cal.App.3d 970, 980-981 [90 Cal. Rptr. 292]).

III. *Requiring appellant to participate in demonstrations before the jury did not deny him the right to a fair trial.*

▮ During the trial appellant was required to participate in certain demonstrations in front of the jury. Thus he was asked to wear a hat similar to that worn by the perpetrator, to stand and hold a gun in his left hand, and to repeat the words uttered by the robber. Appellant now contends

---

[2]There appears some difference in the hair color of the persons depicted in the photographs. This circumstance, however, is inconsequential in the present case because Pierce, not having seen the robber's hair, was unable to identify him by hair.

that the above described in-court demonstrations (a) violated his privilege against self-incrimination, and (b) were impermissibly suggestive. He also insists that (c) he should have been permitted to conduct an in-court lineup instead, and (d) the failure of the trial court to weigh the probative value of the demonstration against its prejudicial effect constituted error. None of these arguments has any merit whatsover.

(a) *An accused may be required to participate in courtroom identification demonstration without violating his right against self-incrimination.*

Although the rule has been settled earlier, the United States Supreme Court made it explicit in *Schmerber* v. *California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], that the Fifth Amendment "offers no protection against compulsion to submit to fingerprinting, photographing or measurements, to write or speak for identification, *to appear in court, to stand, to assume a stance, to walk or to make a particular gesture.*" (P. 764 [16 L.Ed.2d p. 916]; italics added.)

A long and consistent line of California decisions is in accord. (*People* v. *Clark* (1941) 18 Cal.2d 449, 460 [116 P.2d 56]; *People* v. *Lopez* (1963) 60 Cal.2d 223, 244 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *McGowan* (1969) 269 Cal.App.2d 740, 744 [75 Cal.Rptr. 53]; *People* v. *Turner* (1971) 22 Cal.App.3d 174, 180-182 [19 Cal.Rptr. 186].)

Conceding the existence of the rule as he must, appellant urges us to carve a distinction into it by holding that such demonstrations cannot be compelled during trial unless and until the defendant takes the stand.

We categorically reject such a novel suggestion for the very simple reason that there is no rational basis to support the proposed distinction. The rule was not founded, nor does it exist, on the concept of waiver. It is rooted in the fundamental principle that demonstrations such as standing, speaking, assuming poses or stances, donning certain articles of clothing, etc., do not amount to incriminatory testimonial evidence (*Schmerber* v. *California, supra*).

Therefore, since the only question is whether the demonstrative act is violative of the privilege against self-incrimination, the timing of the demonstration, i.e., during pretrial procedure, during the prosecution's case in chief, or during cross-examination, is totally irrelevant.[3]

---

[3]Although the timing question was not specifically raised, we recently approved an identification demonstration where *"At the conclusion of the prosecution's case,* at the request of the prosecution, defendant was asked to put on a scarf and sunglasses and stand before the jury . . . ." (*People* v. *Turner, supra,* at p. 179; italics added.)

(b) *The courtroom identification demonstration was not impermissibly suggestive.*

Appellant's argument that the in-court identification procedure was unfair because it was unduly suggestive is equally unfounded. In support of his position, appellant cites several pretrial lineup cases, e.g., *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], which condemn a "one man showup." The flaw in appellant's argument, however, is that before appellant was required to participate in the in-court demonstration he had already been identified both before trial and in the trial itself. It is clear, therefore, that the *Stovall* line of cases is inapplicable to the instant case, and the procedure was permissible (cf. *People* v. *Turner, supra,* at pp. 181-182).

(c) *Appellant was not entitled to conduct a courtroom lineup before the jury.*

■ Appellant also contends that he was entitled as a matter of law to a courtroom lineup which he requested but which was refused by the court.

This contention has been directly refuted by *People* v. *Doran* (1972) 24 Cal.App.3d 316, 320 [100 Cal.Rptr. 886], where the court, passing upon a similar contention, held that a defendant is not entitled as of right to an in-court lineup. Assuming that such a procedure is a matter addressed to the sound discretion of the trial court, we note that appellant does not claim, and upon the record before us it cannot be seriously contended, that the trial court abused its discretion.

(d) *The trial court was not required to weigh on its own motion the probative value of the courtroom demonstration against its prejudicial effect.*

■ Citing Evidence Code, section 352, and *People* v. *Ford* (1964) 60 Cal.2d 772, 801 [36 Cal.Rptr. 620, 388 P.2d 892], appellant contends that the trial court erred by not weighing on the face of the record the probative value of the courtroom identification against its prejudicial effect before permitting the procedure. This argument of appellant is rooted in a misconception of Evidence Code, section 352, and a misapplication of *Ford.*

Under Evidence Code, section 352, the trial court "in its discretion *may* exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . ." (italics added). The language of the statute together with the pertinent authorities make it evident that the trial judge

is vested with wide discretion to exclude evidence upon the stated basis (*Moody* v. *Peirano* (1906) 4 Cal.App. 411, 418 [88 P. 380]; *Cravens* v. *Kurtz* (1962) 210 Cal.App.2d 810, 816 [26 Cal.Rptr. 802]; Witkin, Cal. Evidence (2d ed. 1966) § 308).

It is also obvious that the statute itself does not impose any requirement upon the trial judge to make *sua sponte* an affirmative finding on the record to the effect that the probative value of the proffered evidence outweighs its prejudicial effect. A contrary interpretation of Evidence Code, section 352, would amount to a requirement that trial judges make such affirmative findings upon every evidentiary ruling. Clearly the Legislature did not intend such an obviously onerous burden to be cast upon the trial judge.

Thus, when an objection to proffered evidence is made on the ground that its prejudicial effect will exceed its probative value, the record need only reflect that the judge did in fact weigh the conflicting factors so that the reviewing court can determine whether that discretion was properly exercised.

Appellant's misapplication of *Ford* comes about by reason of the fact that in *Ford* the Supreme Court concluded that on the face of the record before it the trial court had failed in the face of appropriate objection "to *weigh* the probative value . . . as against the danger of prejudice to the defendant . . ." (60 Cal.2d 772, at p. 801). Quoting from the trial transcript the court pointed out that the trial judge was concerned only with the "materiality" of the evidence.

In the case at bench appellant's objection to the courtroom identification demonstration was not grounded upon a claim of prejudicial effect versus probative value, but upon the constitutional argument which we have previously disposed of.

IV. *The trial court properly refused to give the so-called "Sears instruction."*

In *People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847], the Supreme Court held that the defendant in a criminal case has a right to an instruction that "directs attention to evidence from a consideration of which a reasonable doubt of his guilt could be engendered" ("*Sears instruction*"). Relying upon *Sears,* appellant contends that the trial court erroneously refused to instruct the jury that, in reaching a reasonable doubt, it should consider among others "the testimony of Mr. Pierce that he is not certain which *if either* of the two Summers boys, Tom and Tim, robbed him the night in question"[4] (italics added).

---

[4]The record reveals that the judge was prepared to give the cited portion of the instruction if the words "if either" were stricken, but appellant did not agree to such modification.

█ Appellant's reliance on *Sears* is misplaced. *Sears* authorizes only those instructions which relate "particular facts to any legal issue" (2 Cal. 3d at p. 190). Hence it is not error to refuse an instruction which does not accurately state the evidence to which the jury's attention is sought to be directed (*People v. Bronson* (1968) 263 Cal.App.2d 831, 842-843 [70 Cal.Rptr. 162]).

█ The record as a whole discloses that while Pierce entertained some doubt as to which of the twins committed the robbery, he was absolutely certain that one of them was the robber. Therefore, the requested instruction which suggested that Pierce doubted that *either* of the twins was the perpetrator misstated and distorted the evidence. Consequently, the court's rejection of the instruction was eminently proper.

## V. *The verdict of the jury was supported by sufficient evidence.*

█ Appellant next asserts that the verdict of the jury is not supported by sufficient evidence. In order to substantiate his claim, appellant points to a number of conflicts in the evidence and the fact that there was only a similarity between the gun and hat used by the perpetrator and the ones presented at trial, and that the voice and appearance of appellant were only similar to that of the robber. In addition, appellant places stress on the circumstances that Pierce was not certain which of the twins committed the offense. None of these contentions has any bearing on the sufficiency of evidence in the case at bar.

█ Before the judgment of the trial court can be set aside for insufficiency of evidence to support the verdict, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it (*People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]). █ Applying these general principles to the sufficiency of evidence as to identification of a defendant, the cases have held that in order to sustain a conviction the identification of the accused need not be positive. Testimony that a defendant resembles the robber suffices, and the testimony of one witness is sufficient to support the verdict if such testimony is not inherently incredible. (*People v. Daniels* (1963) 223 Cal.App.2d 441, 445 [35 Cal.Rptr. 890]; *People v. Seals* (1961) 191 Cal.App.2d 734, 738 [13 Cal.Rptr. 7].)

Viewing the record in the light of these rules, there is direct testimony by Pierce stating that it was appellant who robbed him. He also testified that appellant looked like, and his voice sounded similar to that of, the robber. Although Pierce was not certain which of the twins had committed the robbery, appellant's identity was established with abundant circumstantial

evidence. Thus, it was proved at the trial that the robber held the gun in his left hand and appellant was also left-handed whereas his twin was right-handed. In addition, there were striking discrepancies and self-contradictions in appellant's testimony which fully justified the jury in disbelieving him. For example, when the gun was found in Calvin Wadsworth's car, only appellant knew how to handle it, even though he testified that he had never seen the gun before. On the same occasion appellant said that the gun was his little brother's although he had no younger brother, and previously he stated that he had never seen the gun before. Appellant's alibi testimony was likewise thoroughly contradicted. Shortly after his arrest appellant placed himself in the company of his fiancee, Calvin Wadsworth, and his twin brother, whereas at trial he testified that at the critical time he was in the company of his brother, Calvin and Jeff Wadsworth and their mother, and that his fiancee was in Sacramento.

We hold that the record in its entirety compels the conclusion that the verdict of the jury rested on sufficient substantial evidence.

VI. *The district attorney did not commit prejudicial error in his closing argument.*

Despite a total failure to object at trial, appellant now claims that the prosecutor's closing argument contained instances of prejudicial misconduct.

The rules governing our review of this contention are simple and solidly established. "Misconduct in argument may not be assigned on appeal if it was not assigned at the trial, unless the misconduct contributed to the verdict or was so unredeemable that nothing whatever would have cured it. [Citations.]" (*People* v. *Mitchell* (1966) 63 Cal.2d 805, 809 [48 Cal. Rptr. 371, 409 P.2d 211].)

We have examined the comments of which appellant now complains and find no merit whatever to the claim of misconduct. On the contrary, the argument of the prosecutor taken in full context, is clearly within the bounds of permissible prosecutorial advocacy which undoubtedly explains why defense trial counsel interposed no objection.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 20, 1972. Peters, J., was of the opinion that the petition should be granted.